## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-11986 |
| | § | |
| DENNIS PERRY, | § | CHAPTER 11 SUB V |
| | § | |
| DEBTOR. | § | SECTION "A" |
| | § | |
| PERRY ASSOCIATES, LLC; CRESCENT | § | |
| CITY PROPERTY REDEVELOPMENT | § | |
| ASSOCIATION, LLC; CRESCENT CITY | § | |
| MEDICAL SERVICES, INC.; PRIVATE | § | |
| CONNECTION AUTO, LLC; 4330 STATE | § | |
| STREET DRIVE, LLC; 1100 SOUTH | § | |
| JEFFERSON DAVIS PARKWAY, LLC, | § | ADV. NO. 21-1002 |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | |
| | § | |
| DENNIS A. PERRY and DEALS ON | § | |
| WHEELS, LLC, | § | |
| | § | |
| DEFENDANTS. | § | |
| | § | |
| DENNIS PERRY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | ADV. NO. 21-1024 |
| | § | |
| DARRYL FISH, | § | |
| | § | |
| DEFENDANT. | § | |

### MEMORANDUM OPINION AND ORDER

*Oh yeah, and with friends like you, who needs friends?*

-Dirk Calloway

The parties in this case enjoyed a short-lived—and arguably one-sided—friendship and their experience validates the notion that friends should not go into business together.  Some of the allegations and actions between these men are very concerning.  This Court has been asked to decide questions on the validity of various written and oral agreements and determine the final tally between the two former friends.  As shown below, the reliable documentary evidence in this case is sparse and the vast majority of the testimony at trial was based on competing recollections of conversations and cash transactions between Dennis Perry and William A. Alden, M.D. occurring in the past few years.  Thus, this Court places particular emphasis on the credibility of the witnesses in this case.

This Court held a four-day evidentiary hearing on March 28, March 29, April 5, and April 7, 2022 (the "Trial") to resolve the following contested matters:

(i)     *Debtor's Objection to Proof of Claim Number 26 Filed by Perry Associates LLC* (the "Objection to Claim No. 26"), [No. 20-11986, ECF Doc. 69];

(ii)    *Debtor's Objection to Proof of Claim Number 27 Filed by Private Connection Auto LLC* (the "Objection to Claim No. 27"), [No. 20-11986, ECF Doc. 71];

(iii)   *Debtor's Objection to Proof of Claim No. 28 Filed by Private Connection Auto LLC* (the "Objection to Claim No. 28"), [No. 20-11986, ECF Doc. 73];

(iv)    *Debtor's Objection to Proof of Claim Number 29 Filed by Crescent City Property Redevelopment Association LLC* (the "Objection to Claim No. 29"), [No. 20-11986, ECF Doc. 75];

(v)     *Debtor's Objection to Proof of Claim Number 31 Filed by William Alden* (the "Objection to Claim No. 31"), [No. 20-11986, ECF Doc. 77];

(vi)    *Debtor's Objection to Proof of Claim Number 25 Filed by Perry Associates LLC* (the "Objection to Claim No. 25"), [No. 20-11986, ECF Doc. 81];

(vii)   *Debtor's Objection to Proof of Claim Number 32 filed by Crescent City Medical Services Inc.* (the "Objection to Claim No. 32"), [No. 20-11986, ECF Doc. 83]; and

(viii)  *Debtor's Amended and Supplemental Objection To Claims Numbers 25, 26, 27, 28, 29 and 31 and Motion To Strike the Proofs of Claim*, [No. 20-11986, ECF Doc. 156].

The affiliated creditors who filed the above-referenced proofs of claim (the "Alden Creditors")[1] jointly filed an omnibus response to the claim objections.  [No. 20-11986, ECF Doc. 162].

In addition, the parties also presented evidence at Trial to resolve the following contested matters filed by Dennis Perry ("Perry" or the "Debtor") and the Alden Creditors:

(i)  *Motion To Terminate Joint Venture Agreements in Order To Trigger Sale Provisions and Motion for Accounting* filed by the Debtor, [No. 20-11986, ECF Doc. 79], and the opposition filed by the Alden Creditors, [No. 20-11986, ECF Doc. 163];

(ii)  *Debtor's Motion To Avoid Quit Claim Deed*, [No. 20-11986, ECF Doc. 91], and the opposition filed by the Alden Creditors, [No. 20-11986, ECF Doc. 164];

(iii)  *Debtor's Motion To Reject Joint Venture Agreement on 9th Street as Executory Contract*, [No. 20-11986, ECF Doc. 97], and the opposition filed by the Alden Creditors, [No. 20-11986, ECF Doc. 161];

(iv)  *Motion for Relief From Stay 4021 9th Street, Marrero, Louisiana 70072,* [No. 20-11986 ECF Doc. 172], filed by the Alden Creditors, and the opposition filed by the Debtor, [No. 20-11986, ECF Doc. 186]; and

(v)  *Debtor's Motion to Cancel Collateral Mortgage*, [No. 20-11986, ECF Doc. 284], and the opposition filed by the Alden Creditors, [No. 20-11986, ECF Doc. 290].

All of the above-referenced contested matters were consolidated with the claims alleged in Adversary Proceeding No. 20-1002 (collectively, the "Alden Matters").  [No. 20-11986, ECF Doc. 231].

In addition to the Alden Matters, the following contested matters are also before the Court:

(i)  *Debtor's Objection to Proof of Claim No. 22*, [No. 20-11986, ECF Doc. 86], and the response filed by creditor Darryl Fish, [No. 20-11986, ECF Doc. 168]; and

(ii)  the *Debtor's Motion for Willful Violation of the Automatic Stay and for Damages*, [No. 20-11986, ECF Doc. 188].

---

[1]  The "Alden Creditors" are:  Perry Associates, LLC; Crescent City Property Redevelopment, LLC; Crescent City Medical Services, Inc.; Private Connection Auto, LLC; 4330 State Street Drive, LLC; 1100 South Jeff Davis, LLC; and William W. Alden, M.D.

Those contested matters were consolidated with the related claims alleged in Adversary Proceeding No. 21-1024. [No. 20-11986, ECF Docs. 213 & 244; Adv. No. 21-1024, ECF Doc. 79].

On March 18, 2022, the parties stipulated to certain facts (the "Stipulations"). [Adv. No. 21-1002, ECF Doc. 122]; *see also* Hr'g Tr. 134:21–135:10 (March 28, 2022) [No. 20-11986, ECF Doc. 354].

The Alden Creditors filed the following pretrial motions:

(i)     *Motion in Limine To Exclude Text Messages, Timeline, and Emails*, filed by the Alden Creditors, [Adv. No. 21-1002, ECF Doc. 108], and the opposition filed by Perry and Deals on Wheels, [Adv. No. 21-1002, ECF Doc. 132];

(ii)    *Motion in Limine To Exclude Testimony of Dennis Perry's Alleged Cash Payments that Are Uncorroborated and Have No Supporting Documentary Evidence*, filed by the Alden Creditors, [Adv. No. 21-1002, ECF Doc. 109], and the opposition filed by Perry and Deals on Wheels, [Adv. No. 21-1002, ECF Doc. 134];

(iii)   *Motion in Limine To Exclude Testimony of Patrick Gros Due to Conflict of Interest,* filed by the Alden Creditors, [Adv. No. 21-1002, ECF Doc. 110], and the opposition filed by Perry and Deals on Wheels, [Adv. No. 21-1002, ECF Doc. 131];

(iv)   *Motion in Limine To Exclude Testimony as to the Transfer of the Westbank Expressway Property by Dennis Perry,* filed by the Alden Creditors, [Adv. No. 21-1002, ECF Doc. 111], and the opposition filed by Perry and Deals on Wheels, [Adv. No. 21-1002, ECF Doc. 135];

(v)    *Motion in Limine To Exclude Portion of Dennis Perry's Vehicle Summaries Because They Contain Inadmissible Expert Opinion, Inadmissible Conclusions of Fact and Law, and Inadmissible Hearsay,* filed by the Alden Creditors, [Adv. No. 21-1002, ECF Doc. 112], and the opposition filed by Perry and Deals on Wheels, [Adv. No. 21-1002, ECF Doc. 133];

(vi)   *Motion in Limine To Exclude Evidence or Testimony Relative to the Validity of the 2016 Palm Street Sale Since Mr. Perry Had Executed a Cash Sale to Mr. Ballard in 2012,* filed by the Alden Creditors, [Adv. No. 21-1002, ECF Doc. 113], and the opposition filed by Perry and Deals on Wheels, [Adv. No. 21-1002, ECF Doc. 129]; and

(vii)  *Motion in Limine To Exclude Testimony as to the Satisfaction of the Collateral Mortgage by Dennis Perry,* filed by the Alden Creditors, [Adv. No. 21-1002, ECF

Doc. 115], and the opposition filed by Perry and Deals on Wheels, [Adv. No. 21-1002, ECF Doc. 130].

For the reasons stated on the record at the Trial, the Court denied the *Motion in Limine To Exclude Testimony of Patrick Gros Due to Conflict of Interest* and took the rest of the motions in limine under submission. At the Trial, the parties stipulated to the qualification of Adele Thonn of The Write Consultants and Susan Abbey of Susan E. Abbey L.L.C. as handwriting experts. *See* Hr'g Tr. 16:3–12, 62:19–63 (Mar. 28, 2022). The Court heard testimony during the Trial from the following witnesses: Dennis Perry; Deryl Bourgeois of Southern Title, Inc.; Adele A. Thonn of The Write Consultants; Gilberto Ezyaguirre; Darryl Fish; Doug Ellis; Carla Breaux; Perry Manning; David Cook; Dr. William Alden; Scott Dusang; Susan Abbey of Susan E. Abbey L.L.C.; and Patrick Sanders. The Court admitted the following exhibits into evidence: Debtor Exhibits 1, 6–13. 16–27, 29–39, 41–50, 54–59, 61–62, 64–69, 72–76, 80, 84–88, 91, 94–99; Fish Exhibits 5 & 6; and Alden Exhibits B, D, H, J–O, U, W, Y, JJ, LL, PP, RR, SS, UU, VV, CCC, DDD, LLL, PPP, and SSSS.

The Court accepted post-Trial briefing from Perry and the Alden Entities, [Adv. No. 21-1002, ECF Docs. 141 & 142], as well as Darryl Fish, [Adv. No. 21-1024, ECF Doc. 59], and took all matters under submission, [No. 20-11986, ECF Doc. 327]. On April 3, 2023, Darryl Fish filed a *Motion To Refer Debtor to United States Attorney and/or Federal Bureau of Investigation*, asserting allegations regarding the condition and possession of the property belonging to the estate (the "Criminal Referral Motion"). [Adv. No. 21-1024, ECF Docs. 68 & 71]. Perry and third-party David Cook filed responses to that motion, [Adv. No. 21-1024, ECF Docs. 74 & 75], and Darryl Fish filed a reply brief, [Adv. No. 21-1024, ECF Doc. 81]. After notice and a hearing, the Court consolidated that motion and the responses with these consolidated matters, as the Criminal

Referral Motion concerns the same events and disputes among the parties to these contested matters.  [Adv. No. 21-1024, ECF Doc. 79].

Pursuant to Federal Rules of Bankruptcy 9014 and 7052, the Court now makes the following findings of fact and conclusion of law:[2]

## JURISDICTION AND AUTHORITY

This Court has jurisdiction to hear and determine on a final basis the contested matters and the claims and counterclaims asserted in the above-captioned adversary proceedings pursuant to 28 U.S.C. § 1334(b) and *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011).  The contested matters and the claims asserted in the above-captioned adversary proceedings are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (C), (G), and (O).  To the extent any non-core claims or counterclaims have been asserted in the above-captioned adversary proceedings, the parties have consented to this Court's jurisdiction to hear and determine all on a final basis.  To the extent necessary, the parties have impliedly consented to the entry of a final order by this Court resolving all contested matters, claims, and counterclaims.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947–48 (2015) (holding that a party impliedly consents to adjudication when the party "voluntarily appear[s] to try the case" with knowledge of the need for consent and without affirmatively refusing to provide it).

---

[2]     To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

# FINDINGS OF FACT

## Specific Witness Credibility Determinations

1.      The Court finds Perry to be a generally credible and earnest witness.  He appeared to answer questions posed to him truthfully to the best of his recollection.  But Perry is not a sophisticated businessman and his testimony was affected by the lack of detailed documentation of the transactions with Dr. Alden.

2.      The Court does not find William A. Alden ("Dr. Alden") to be a credible witness and gives no weight to his testimony.  The Court found Dr. Alden to be an evasive, argumentative, and untrustworthy witness.  The Court also afforded significant weight to properly presented impeachment evidence used to discredit Dr. Alden by showing untruthful character or prior bad acts, including, but not limited to, evidence showing that he applied for a life insurance policy on behalf of Perry in March 2018 and named himself as the beneficiary without Perry's knowledge or consent.  *See* Hr'g Tr. 190:19–191:25 (Mar. 29, 2022) [No. 20-11986, ECF Doc. 355]; Debtor Impeachment Ex. 9.  The Court's factual findings in this case and the impeachment evidence presented, at best, confirm Dr. Alden's lack of credibility as a witness in these proceedings; at worst, they potentially implicate Dr. Alden in the commission of fraud against Perry.

3.      Handwriting expert Adele A. Thonn of The Write Consultants provided testimony that this Court found to be reliable and very helpful in assisting the Court to decide the disputes here.  The Court finds Thonn to be a credible, trustworthy, and earnest expert witness, puts great stock in her methodology, and gives maximum credibility to her expert reports and testimony.

4.      The Court finds that the testimony given by handwriting expert Susan Abbey was not helpful to the Court to decide the contested matters here.  The Court does not trust her methodology.  Abbey testified that she reviewed five contested documents (some original and

some only copies) to assess the authenticity of Perry's signature on those documents and concluded every time that Perry's signature on each of those documents "was genuine, with a high degree of probability."  *See* Hr'g Tr. 62:19–88:25 (Mar. 28, 2022) [No. 20-11986, ECF Doc. 354].  But Abbey never reviewed documents containing the signatures of both Perry and Dr. Alden, and, at times, she only reviewed a signature page and not the whole document. *See id*.  Because she did not compare Perry's signature across documents purportedly signed by Perry as Adele Thonn did, Abbey's analysis could not assist the Court in determining whether Perry in fact signed any of the documents specifically.  No one disputed whether the copy of the signature on any given document belonged to Perry; the dispute is whether Perry actually signed any of the contested documents, raising the possibility that someone took a signature page from one document and attached it to other documents.  The Court finds Abbey's testimony to be irrelevant and unhelpful and gives little, if any, weight to it.

5.      Darryl Fish participated in the Trial *pro se*.  As a witness, the Court found Fish to be pleasant, but unsophisticated.  His testimony was inconsistent and unreliable.  Thus, the Court gives little weight to his testimony.

6.      The Court heard testimony from Patrick Sanders, an attorney who withdrew from the practice of law in June 2021 for health reasons amidst pending Bar complaints.  *See* Hr'g Tr. 130:16–131:19 (Mar. 29, 2022) (Sanders testimony).  Because Sanders possessed no firsthand, personal knowledge regarding the authenticity of any of the documents attached to any of the proofs of claim he filed on Dr. Alden's behalf or the basis or accuracy of any of the amounts alleged to be owed by Perry to Dr. Alden under those documents, the Court gives little to no weight to his testimony.

7.      Deryle Bourgeois of Southern Title, Inc. provided testimony.  The Court found him to be a credible, straightforward witness and gives much weight to his testimony.

8.      Douglas Ellis also provided testimony.  Like Sanders, Ellis possessed no firsthand, personal knowledge regarding the basis or accuracy of any of the amounts alleged to be owed by Perry to Dr. Alden or any amounts Dr. Alden allegedly spent in maintaining various properties. The Court found Ellis' testimony to be biased, incomplete, and unhelpful, and disregards it.

### Perry's Early Purchases of Property

9.      In 1993, Perry purchased immovable property with a physical address of 4021 9th Street, Marrero, Louisiana 70072 (the "9th Street Property").  *See* Hr'g Tr. 133:1–162:1 (Mar. 28, 2022); Hr'g Tr. 50:12–14 (Apr. 7, 2022) [No. 20-11986, ECF Doc. 357].

10.      In 1994, Perry purchased an empty lot across the street from the 9th Street Property (the "Westbank Expressway Lot").  *See* Hr'g Tr. 50:5–51:9 (Apr. 7, 2022).  For years, Perry and his family lived in the 9th Street Property and operated a car-sales business on the Westbank Expressway Lot.  *See id.*  Perry stopped selling cars on the Westbank Expressway Lot in or about 2016.  *See id.*

11.      In 2000, Perry bought a home with the physical address of 7013 Meadowbrook Drive, Mandeville, Louisiana 70471 (the "Meadowbrook Property"), where he currently resides. *See id.*

### The Palm Drive Property and the Bond for Deed

12.      In 2006, Perry purchased immovable property with the physical address of 3065 South Palm Drive, Slidell, LA 70458 (the "Palm Drive Property") and financed the purchase through Sun Finance Company, LLC.  *See* Debtor Ex. 30; Hr'g Tr. 20:10–22 (Mar. 29, 2022); Stipulation No. 79.

9

13.    On March 7, 2012, Perry executed a Bond for Deed with Brian Ballard ("Ballard") to finance Ballard's purchase of the Palm Drive Property for $180,000 (the "Palm Bond for Deed").  *See* Debtor Ex. 30; Hr'g Tr. 20:23–21:19 (Mar. 29, 2022) (Perry testimony); Hr'g Tr. 110:17–112:1 (Mar. 29, 2022) (Bourgeois testimony).  The terms of the Palm Bond for Deed required Ballard to pay a down payment of $5,000 and make twenty-three monthly payments of $812 toward principal and interest with a balloon payment of the remaining balance of $75,702.03 due in the twenty-fourth month, or February 2014.  *See* Debtor Ex. 31; Hr'g Tr. 20:23–26:9 (Mar. 29, 2022).

14.    Ballard paid monthly payments under the Palm Bond for Deed directly to Southern Title, Inc., although Perry granted two extensions of the Palm Bond for Deed's maturity date  *See* Debtor Ex. 32; Hr'g Tr. 26:2–25 (Mar. 29, 2022).

15.    The agreement between Perry and Ballard contemplated that the Palm Bond for Deed would be held in trust by Southern Title, Inc. until Ballard made the final payment; at that time, the deed would be recorded in the appropriate mortgage records and title of the Palm Drive Property would pass to Ballard.  *See* Hr'g Tr. 110:17–112:1 (Mar. 29, 2022) (Bourgeois testimony).  As explained by Deryle Bourgeois of Southern Title, Inc.:

> [W]e execute a cash sale along with the bond for deed and then there's an agreement to hold the sale in escrow until it's paid for on it.  That way if we can't find the seller and the buyer comes into pay, we already have an executed deed.  The seller passes away, we don't have to go through a succession, the deed's already been subject to the suspensive condition that the debt due on the bond for deed is paid off.

Hr'g Tr. 111:12–20 (Mar. 29, 2022).

16.    When Ballard took possession of the Palm Drive Property, the bottom floor of the property had been flooded and Ballard agreed to perform renovations; Perry agreed to pay him for his labor and reimburse him for expenses associated with those renovations.  *See* Hr'g Tr. 84:25–

85:9 (Mar. 29, 2022). By December 2015, Ballard had performed repairs and made improvements to the Palm Property in the equivalent amount of $20,000; however, Ballard informed Perry that he would not be able to pay the remaining balance of approximately $62,700 that he owed under the Palm Bond for Deed at the extended maturity date of March 2016. *See* Hr'g Tr. 27:3–35:16 (Mar. 29, 2022). And Perry did not have $20,000 to pay Ballard for the work performed on the Palm Drive Property. *See* Hr'g Tr. 28:4–6 (Mar. 29, 2022).

### Deals on Wheels and the Collateral Mortgage

17.    Perry owns and operates a used-car business called "Deals on Wheels." Hr'g Tr. 13:3–18 (Mar. 29, 2022); Hr'g Tr. 209:7–212:5 (Apr. 7, 2022); Stipulation No. 66.

18.    Perry finances the business using a line of credit obtained from NextGear Capital. *See* Hr'g Tr. 14:18–24 (Mar. 29, 2022); Hr'g Tr. 209:7–216:24 (Apr. 7, 2022); Stipulation No. 67. As explained by Perry:

> [NextGear] is my floor plan—they give you a line of credit so you can go to an auction and buy cars, and they pay for the cars and they hold the titles for you until you sell the vehicle and then you have to pay them. And if you don't pay—if you don't sell the car, you have to pay curtailments every 30 days.

*See* Hr'g Tr. 14:19–24 (Mar. 29, 2022).

19.    Perry and Dr. Alden are neighbors, but only met when Dr. Alden visited the lot at Deals on Wheels to shop for a vehicle. *See* Hr'g Tr. 13:8–18 (Mar. 29, 2022).

20.    After some amount of time, Perry and Dr. Alden became friends, and Perry shared with Dr. Alden the fact that he had fallen behind on his payments to NextGear under the terms of the line of credit. In exchange for listing Dr. Alden as a salesperson at Deals on Wheels and allowing him to use Deals on Wheels' license to purchase cars at auction, Dr. Alden loaned Perry approximately $2,000 to be used to bring the NextGear account current. *See* Hr'g Tr. 13:19–14:9 (Mar. 29, 2022); Hr'g Tr. 53:18–25 (Apr. 5, 2022) [No. 20-11986, ECF Doc. 356].

11

21.     Perry repaid that loan in cash with interest the following day.  *See* Hr'g Tr. 13:19–14:17 (Mar. 29, 2022).

22.     From that point until early 2015, Perry continued to borrow similar sums of money from Dr. Alden and would repay the loans in cash over time.  *See* Hr'g Tr. 14:25–15:6 (Mar. 29, 2022).  Because the amounts of the loans made by Dr. Alden to Perry were relatively small, the parties generally did not execute formal loan documents.  *See* Stipulation No. 70.  The first documented loan made by Dr. Alden to Perry occurred in 2013 in the amount of $5,500, secured by a 1964 Chevrolet Impala ("Promissory Note No. 1"); Perry timely repaid Promissory Note No. 1 in full.  *See* Debtor Ex. 16; Hr'g Tr. 52:16–53:15 (Apr. 5, 2022); Stipulation No. 71.

23.     In early 2015, Perry owed Dr. Alden approximately $6,000.  *See* Hr'g Tr. 16:11–13 (Mar. 29, 2022).

24.     In early 2015, NextGear performed an unscheduled mid-month audit of Deals on Wheels and assessed the company with approximately $60,000 in payments and fees owed on the line of credit for cars that Perry had sold.  *See* Hr'g Tr. 15:7–11 (Mar. 29, 2022).

25.     On June 5, 2015, in exchange for Dr. Alden loaning Perry $60,000 to pay the debt owed to NextGear, Perry executed a promissory note in favor of Dr. Alden, acknowledging the total debt owed to date by Perry to Dr. Alden as $67,854.50 ("NextGear Promissory Note").  *See* Debtor Ex. 29; Stipulation No. 74.  The NextGear Promissory Note had a maturity date of December 5, 2015 and the debt would accrue "interest at the rate of 1 per cent (1%) simple interest per month from date until paid." *See id*.

26.     Dr. Alden drafted the NextGear Promissory Note.  *See* Hr'g Tr. 19:4–6 (Apr. 7, 2022).

27.     At the same time, Perry executed a Collateral Mortgage in favor of Dr. Alden and pledged three immovable properties as collateral to secure repayment of the debt acknowledged to be $67,854.50 (the "Collateral Mortgage").  *See* Debtor Ex. 29; Hr'g Tr. 15:7–17:21 (Mar. 29, 2022); Stipulation No. 75.

28.     The three immovable properties that Perry pledged to Dr. Alden via the Collateral Mortgage included the 9th Street Property, the Meadowbrook Property (Perry's home), and a property located at 26426 Highway 190, Lacombe, Louisiana 70445.  *See* Debtor Ex. 29; Hr'g Tr. 17:22–25 (Mar. 29, 2022); Stipulation No. 75.

29.     Dr. Alden recorded the Collateral Mortgage in the public records of Jefferson Parish on June 8, 2015.  *See* Debtor Ex. 94 (recorded "06/08/2015 12:59:02 PM JEFF PAR 4435696 rdf $113.00 11524296 MORTGAGE BOOK 4654 PAGE 306").

30.     At the time Perry and Dr. Alden executed the Collateral Mortgage, each of the properties pledged to secure repayment of the NextGear Promissory Note were encumbered by more senior liens.  *See* Hr'g Tr. 18:1–19 (Mar. 29, 2022); Stipulation Nos. 76–78.

31.     In December 2015, after Ballard informed Perry that he would not be able to pay the remaining balance of approximately $62,700 that he owed under the Palm Bond for Deed, Perry proposed a deal to Dr. Alden:   (i) Dr. Alden would reimburse Ballard $20,000 for improvements made to the Palm Drive Property; (ii) Dr. Alden would pay off the amount owed to the mortgage lender, Sun Finance, on the Palm Drive Property; (iii) Dr. Alden would receive a credit toward the purchase price of the Palm Drive Property in the amount owed to him by Perry under the NextGear Promissory Note; and (iv) Dr. Alden would cancel the Collateral Mortgage. Then Perry would prepare the Palm Drive Property for immediate sale, and the two would split the proceeds after reimbursement of expenses (the "Palm Drive Joint Venture").  *See* Hr'g Tr.

28:4–14 (Mar. 29, 2022) (testimony by Perry); Hr'g Tr. 112:2–114:24 (Mar. 29, 2022) (Bourgeois testimony).

32.     Dr. Alden agreed with that plan and immediately obtained insurance for the Palm Drive Property, telling his insurance agent that "my neighbor borrowed money and he is selling me his equity interest in the property to repay the loan balance which is now due," but also stated: "I do not know how long I will actually have the property.  We may use it on weekends, but I will probably keep it rented.  I am looking at all of my options."  Debtor Ex. 33 (e-mail dated Jan. 18, 2016).  Dr. Alden and his agents also obtained payoff information for the Collateral Mortgage as well as the mortgage on the Palm Drive Property so that the deal proposed by Perry could close. *See* Hr'g Tr. 28:15–32:14 (Mar. 29, 2022); Debtor Ex. 33.

33.     On January 19, 2016, Perry attended the closing for the sale of the Palm Drive Property with Dr. Alden, Ballard, and Bourgeois, the title agent for Southern Title, Inc.  *See* Hr'g Tr. 33:23–34:3 (Mar. 29, 2022); Stipulation No. 80.  Perry reviewed the Settlement Statement summarizing the transaction (the "Initial Palm Drive Settlement Statement").  *See* Debtor Ex. 34; Hr'g Tr. 32:24–36:7 (Mar. 29, 2022).  On that statement, Perry was listed as the seller of the property and Crescent City Property Redevelopment Association, LLC, one of Dr. Alden's closely held companies, was listed as the buyer.  *See* Debtor Ex. 34; Hr'g Tr. 33:2–14 (Mar. 29, 2022); Stipulation No. 81.

34.     The sale price listed on the Initial Palm Drive Settlement Statement was $182,578.37.  *See* Debtor Ex. 34.  Although the Initial Palm Drive Settlement Statement contained provisions reimbursing Ballard, paying off mortgage lender Sun Finance in full, and giving Dr. Alden $66,000 credit toward the purchase price for the property for amounts owed by Perry to Dr. Alden under NextGear Promissory Note, no documents had been prepared for Dr. Alden to release

the Collateral Mortgage from the mortgage records. *See* Hr'g Tr. 33:2–36:7 (Mar. 29, 2022). Dr. Alden stated to Perry that the Collateral Mortgage would be released later and, after some argument, Perry left the closing without signing the necessary paperwork to sell the Palm Drive Property. *See id.*

35.    Unbeknownst to Perry, the closing on the Palm Drive Property did occur that day. *See* Debtor Exs. 34 & 35; Hr'g Tr. 35:22–37:15 (Mar. 29, 2022). A second Palm Drive Settlement Statement ("Final Palm Drive Settlement Statement") reveals that the sale price for the Palm Drive Property increased to $186,575.11 with a credit for $62,702.03 to Dr. Alden, notated as the "Bond for Deed Balance" rather than amounts due by Perry to Dr. Alden under the NextGear Promissory Note secured by the Collateral Mortgage. *See* Debtor Ex. 34 (compare line 209 of the Initial Palm Drive Settlement Statement with line 208 of the Final Palm Drive Settlement Statement).

36.    Nevertheless, on March 1, 2016, Dr. Alden received a check payable to him in the amount of $14,043.40 from Southern Title, Inc., representing funds received from Perry to pay off the remaining balance Dr. Alden claimed he was owed under the NextGear Promissory Note. *See* Debtor Ex. 36; Hr'g Tr. 113:21–114:24 (Mar. 29, 2022) (Bourgeois testimony). Dr. Alden claimed he was owed interest on the NextGear Promissory Note debt plus added costs associated with other unidentified transactions between Perry and him. *See* Debtor Ex. 36; Hr'g Tr. 113:21–114:24 (Mar. 29, 2022) (Bourgeois testimony).

37.    In correspondence to Dr. Alden from Southern Title enclosing the check for $14,043.40, representatives of Southern Title requested that Dr. Alden forward the information required to release the Collateral Mortgage. *See* Debtor Ex. 36.

38.    Dr. Alden never provided that information or released the Collateral Mortgage.

39.     Perry performed renovations on the Palm Drive Property to prepare it for sale in alignment with the deal struck between Perry and Dr. Alden.  *See* Stipulation No. 82.

40.     Perry later discovered that Dr. Alden, through his closely held company, Crescent City Property Redevelopment Association, LLC, had acquired the Palm Drive Property in January 2016.  *See* Debtor Ex. 36; Hr'g Tr. 35:20–38:11 (Mar. 29, 2022).

41.     The Palm Drive Joint Venture, that is, the deal between Perry and Dr. Alden to transfer ownership of the Palm Drive Property, to prepare it for sale, and to split the proceeds of that sale was not reduced to writing until August 17, 2017 (the "Palm Drive JV Agreement").  *See* Hr'g Tr. 57:11–61:6 (Mar. 29, 2022); Debtor Ex. 41.

42.     The Court finds that the debt owed pursuant to the NextGear Promissory Note has been satisfied and that the Collateral Mortgage should have been cancelled/released.

**Promissory Notes Executed after the NextGen Promissory Note**

43.     The Court finds the testimony provided by Perry concerning Promissory Note Nos. 1–8 to be credible and persuasive.  Although Perry continued to accept loans from Dr. Alden and make payments on those loans (often in cash), he primarily wanted to do whatever would satisfy Dr. Alden in order to obtain a release of the Collateral Mortgage encumbering his home.  *See* Hr'g Tr. 52:13–79:1 (Apr. 5, 2022) (Perry testimony) ("Alden said I still owed him money for the collateral mortgage that was supposed to have been canceled and $8,500 for a truck that he bought in 2012 and then wasn't repaired.  So I just didn't—I just agreed with it.  There was nothing I could do because he still had my collateral mortgage.  So I felt like I had a gun to my head pretty much, so I just went with it.").

44.     Dr. Alden drafted all promissory notes discussed herein.  *See* Hr'g Tr. 19:4–6 (Apr. 7, 2022).

45.     Each executed promissory note superseded the prior note.  *See* Hr'g 57:12–17 (Apr. 5, 2022).

*December 8, 2016 Promissory Note No. 1*

46.     On December 8, 2016, Perry executed a promissory note in favor of Crescent City Property Redevelopment Association, LLC, in the principal amount of $16,000 ("Promissory Note No. 1").  *See* Debtor Ex. 17; Hr'g Tr. 54:24–56:16 (Apr. 5, 2022); Stipulation No. 87.  Dr. Alden signed Promissory Note No. 1 on behalf of Crescent City Property Redevelopment Association, LLC.  *See* Debtor Ex. 17.

47.     Perry paid a total of $15,000 toward the principal amount owed under Promissory Note No. 1, leaving a balance of $1,000.  *See* Debtor Exs. 17 & 18, Hr'g Tr. 54:24–57:17 (Apr. 5, 2022); Stipulation No. 88.

*February 7, 2017 Promissory Note No. 2*

48.     On February 7, 2017, Perry executed a promissory note in favor of Crescent City Property Redevelopment Association, LLC, purportedly in the total principal amount of $36,000 ("Promissory Note No. 2").  *See* Debtor Ex. 18; Hr'g Tr. 56:20–57:17, 58:8–21, 59:2–61:20 (Apr. 5, 2022).  Of the $36,000 amount listed on the face of Promissory Note No. 2, Perry received new funds in the amount of $15,000, and the $1,000 balance from Promissory Note No. 1 was carried forward into Promissory Note No. 2.  *See* Debtor Ex. 18; Hr'g Tr. 56:20–57:17 (Apr. 5, 2022). Through Promissory Note No. 2, Dr. Alden also attempted to carry forward a $20,000 balance purportedly owed under the NextGen Promissory Note and Collateral Mortgage.  *See* Debtor Ex. 18.  The parties stipulated that Dr. Alden loaned Perry additional funds of $6,000 under Promissory Note No. 2.  *See* Stipulation No. 94; Hr'g Tr. 60:1–10 (Apr. 5, 2022).  Because the debt owed pursuant to the NextGear Promissory Note and Collateral Mortgage had been satisfied, the Court

finds that the total principal amount owed under Promissory Note No. 2 was $22,000. *See supra*

¶¶ 17–42; Hr'g Tr. 58:8–20 (Apr. 5, 2022).

49. Perry repaid a total of $16,000 toward the principal amount owed under Promissory

Note No. 2, leaving a balance owed of $6,000. *See* Stipulation Nos. 90–93 & 95; Hr'g Tr. 60:12–

15 (Apr. 5, 2023).

*August 7, 2017 Promissory Note No. 3*

50. On August 4, 2017, Perry executed a buy/sell agreement with a buyer who wanted

to purchase the Westbank Expressway Lot for $47,000. *See* Debtor Ex. 54; Hr'g Tr. 69:15–83:2

(Apr. 7, 2022).

51. On August 7, 2017, Perry executed a promissory note in favor of "William Alden

MD through the corporate entities of Crescent City Property Revelopment [*sic*] Associates, LLC

and Crescent City Medical Services, LLC" purportedly in the total principal amount of $37,000

("Promissory Note No. 3"). *See* Debtor Ex. 19; Hr'g Tr. 16:21–63:15 (Apr. 5, 2022); Stipulation

No. 96. Of the $37,000 amount listed on the face of Promissory Note No. 3, Perry received new

funds in the amount of $10,000. *See* Debtor Ex. 19; Hr'g Tr. 61:21–63:15 (Apr. 5, 2022). Through

Promissory Note No. 3, Dr. Alden carried forward an incorrect balance of $7,000 from Promissory

Note No. 2, and attempted to carry forward $20,000 purportedly still owing under the NextGear

Promissory Note and Collateral Mortgage. *See* Debtor Ex. 19; Hr'g Tr. 61:21–62:15 (Apr. 5,

2022). Because the debt owed pursuant to the NextGear Promissory Note and Collateral Mortgage

had been satisfied, and with the correct balance of $6,000 owing under Promissory Note No. 2, the

Court finds that the total principal amount owed under Promissory Note No. 3 was $16,000. *See*

*supra* ¶¶ 17–42.

52.     To secure repayment of amounts owed under Promissory Note No. 3, Perry contemporaneously granted a multiple indebtedness mortgage on the Westbank Expressway Lot. *See* Debtor Ex. 20; Stipulation No. 98. That mortgage was recorded in the public records on September 7, 2017. *See* Debtor Ex. 20.

53.     Dr. Alden credited Perry $3,000 against Promissory Note No. 3 for work performed renovating the Palm Drive Property; otherwise Perry made no payments under Promissory Note No. 3. *See* Hr'g Tr. 64:5–25 (Apr. 5, 2022); *Cf.* Debtor Ex. 19, *with* Debtor Ex. 20. Thus, the Court finds that the amount owed under Promissory Note No. 3 was $13,000.

54.     In the meantime, NextGear had returned to Perry's car lot, Deals on Wheels, audited the inventory on the lot, and assessed Perry $22,000 under his line of credit. Dr. Alden convinced Perry to cancel the sale of the Westbank Expressway Lot for $47,000 and to tell the realtor marketing the lot to raise the sale price to $79,500 or advertise it for lease at $3,500 per month, proposing in the interim to use the lot for a joint venture together selling cars. Dr. Alden paid Perry $22,000 on or about September 18, 2017, and Perry agreed to pay half of the proceeds upon the sale of the Westbank Expressway Lot. *See* Hr'g Tr. 69:15–83:2 (Apr. 7, 2022); Debtor Exs. 19, 20, 54, 55, 56, 57, 58, 97.

55.     Unbeknownst to Perry, on May 29, 2019, Dr. Alden recorded a Quitclaim Deed dated September 19, 2017, purporting to transfer Perry's interest in the Westbank Expressway Lot to Dr. Alden for $22,000 (the "Westbank Expressway Quit Claim Deed"). *See* Debtor Ex. 58 (recorded "EFILE:05/29/2019 1:08 PM JEFF PAR 5986389 hrb $105.00 = 11924652 CONVEYANCE BOOK 3421 PAGE 766"). That recordation occurred weeks after Dr. Alden initiated legal action against Perry and Deals on Wheels in Louisiana state court ostensibly seeking to recover unpaid secured and unsecured debts. *See infra* ¶ 130.

19

56.     Adele Thonn provided expert testimony and a report as to whether Perry signed the Westbank Expressway Quit Claim Deed. *See* Hr'g Tr. 41:2–44:10 (Mar. 28, 2022); Debtor Exs. 58 & 87.

57.     No original of the Westbank Expressway Quit Claim Deed was offered for evidence during the trial.

58.     Based upon Thonn's expert testimony and reports as well as testimony provided by Perry, the Court finds that Perry did not sign the Westbank Expressway Quit Claim Deed. *See* Hr'g Tr. 41:2–44:10 (Mar. 28, 2022) (Thonn testimony) (reviewing two different documents purporting to be the Westbank Expressway Quit Claim Deed and eliminating Perry as the signer of one or both of them); Hr'g Tr. 69:15–83:2 (Apr. 7, 2022) (Perry testimony); Debtor Exs. 58 & 87.

59.     The Court finds that Perry did not consent to be bound by the Westbank Expressway Quit Claim Deed and that the Westbank Expressway Quit Claim Deed is not a valid or enforceable contract. *See Keller v. Sisters of Charity of Incarnate Word*, 597 So. 2d 1113, 1115 (La. App. 2 Cir. 1992) (citing La. Civ. Code arts. 1918, 1927, 1966 & 1971; *First Nat'l Bank of Shreveport v. Williams*, 346 So. 2d 257 (La. App. 3 Cir. 1977)).

*September 20, 2017 Promissory Note No. 4*

60.     On September 20, 2017, Perry executed a promissory note in favor of "William Alden MD through the corporate entities of Crescent City Property Revelopment [*sic*] Associates, LLC and Crescent City Medical Services, LLC" purportedly in the total principal amount of $46,000 ("Promissory Note No. 4"). Debtor Ex. 23; Hr'g Tr. 65:4–66:6 (Apr. 5, 2022); Stipulation No. 99. Of the $46,000 amount listed on the face of Promissory Note No. 4, Perry received new funds of $9,000. *See* Debtor Ex. 23; Hr'g Tr. 67:14–16 (Apr. 5, 2022). Through Promissory Note

20

No. 4, Dr. Alden carried forward an incorrect balance of $17,000 from Promissory Note No. 3 and attempted to carry forward $20,000 purportedly still owing under the NextGear Promissory Note and Collateral Mortgage.  *See* Debtor Ex. 23; Hr'g Tr. 65:4–66 (Apr. 5, 2022).  Because the debt owed pursuant to the NextGear Promissory Note and Collateral Mortgage had been satisfied, and with the correct balance of $13,000 owing under Promissory Note No. 3, the Court finds that the total principal amount owed under Promissory Note No. 4 was $22,000.  *See supra* ¶¶ 17–42.

61.     Perry paid $3,000 toward the amount owed under Promissory Note No. 4, leaving a balance owed of $19,000.  *See* Debtor Ex. 23; Hr'g Tr. 67:17–20 (Apr. 5, 2022).

*November 24, 2017 Promissory Note No. 5*

62.     On November 24, 2017, Perry executed a promissory note in favor of "William Alden MD through the corporate entities of Crescent City Property Revelopment [*sic*] Associates, LLC and Crescent City Medical Services, LLC" purportedly in the total principal amount of $53,000 ("Promissory Note No. 5").  Debtor Ex. 24; Stipulation No. 100.  Of the $53,000 amount listed on the face of Promissory Note No. 5, Perry received $7,000 in new funds.  *See* Debtor Ex. 24; Hr'g Tr. 67:21–69:16 (Apr. 5, 2022).  Through Promissory Note No. 5, Dr. Alden carried forward an incorrect balance of $26,000 from Promissory Note 4 and attempted to carry forward $20,000 purportedly still owing under the NextGear Promissory Note and Collateral Mortgage.  *See* Debtor Ex. 24; Hr'g Tr. 67:21–69:16 (Apr. 5, 2022).  Because the debt owed pursuant to the NextGear Promissory Note and Collateral Mortgage had been satisfied, and with the correct balance of $19,000 owing under Promissory Note No. 4, the Court finds that total principal amount owed under Promissory Note No. 5 was $26,000.  *See supra* ¶¶ 17–42.

63.     Perry paid $14,000 toward the amount owed under Promissory Note No. 5, leaving a balance owed of $12,000.  *See* Debtor Ex. 24; Hr'g Tr. 67:17–20 (Apr. 5, 2022).

*February 6, 2018 Promissory Note No. 6*

64.     On or about February 6, 2018, Perry reviewed but did not sign a promissory note in favor of "William Alden MD through the corporate entities of Crescent City Property Revelopment [*sic*] Associates, LLC and Crescent City Medical Services, LLC" purportedly in the total principal amount of $59,000 ("Promissory Note No. 6").  Debtor Ex. 25; Hr'g Tr. 69:17– 72:16 (Apr. 5, 2022).  Of the $59,000 listed on the face of Promissory Note No. 6, Perry received $6,000 in new funds.  Through Promissory Note No. 6, Dr. Alden attempted to carry forward an incorrect balance of $33,000 from Promissory Note No. 5 as well as $20,000 purportedly still owing under the NextGear Promissory Note and Collateral Mortgage.  *See* Debtor Ex. 25; Hr'g Tr. 69:17–72:16 (Apr. 5, 2022).  Because the debt owed pursuant to the NextGear Promissory Note and Collateral Mortgage had been satisfied, and with the correct balance of $12,000 owing under Promissory Note No. 5, the Court finds that the total principal amount owed under Promissory Note No. 6 was $18,000.  *See supra* ¶¶ 17–42.

65.     Despite not having signed Promissory Note No. 6, Perry paid $6,000 toward the debt owed, leaving a balanced owed of $12,000.  *See* Debtor Ex. 25; Hr'g Tr. 69:17–72:16 (Apr. 5, 2022).

66.     Perry granted no security interests in collateral to secure repayment of any debt owed under Promissory Note No. 6.

67.     Because each promissory note superseded the note executed before it, the total amount owed by Perry to Dr. Alden and his wholly owned corporate counterparties under Promissory Note No. 6 is $12,000.

68.     Although some of the promissory notes mention transactions between Dr. Alden and Perry regarding the sale of vehicles or boats, no credible documentary evidence or testimony

22

was presented to the Court proving those transfers, identifying the terms of any joint ventures between Dr. Alden and Perry concerning vehicles or boats, proving any expenditures associated with those joint ventures, or the granting or perfection of any security interests in vehicles or boats. *See* Hr'g Tr. 190:1–209:5 (Apr. 7, 2022) (Sanders testimony); Hr'g Tr. 209:11–240:10 (Apr. 7, 2022) (testimony of Perry); Hr'g Tr. 247:12–251:18 (Apr. 7, 2022) (Dr. Alden testimony).

*May 30, 2018 Promissory Note No. 7*

69.     On or about May 30, 2018, Dr. Alden drafted a promissory note without Perry's knowledge in favor of "William Alden MD through the corporate entities of Crescent City Property Revelopment [*sic*] Associates, LLC and Crescent City Medical Services, LLC" purportedly in the "total borrowed principal amount in excess of ~$200,000 to date" ("Promissory Note No. 7").  Debtor Ex. 26; Hr'g Tr. 72:17–73:15 (Apr. 5, 2022).  Promissory Note No. 7 does not provide for Dr. Alden to loan any new funds to Perry.

70.     Adele Thonn provided expert testimony and a report as to whether Perry signed Promissory Note No. 7.  *See* Hr'g Tr. 16:7–21:25, 38:21–41:1 (Mar. 28, 2022); Debtor Ex. 86.

71.     Based upon Thonn's expert testimony and report as well as testimony provided by Perry, the Court finds that Perry did not sign Promissory Note No. 7.  *See* Debtor Exs. 26 & 86; Hr'g Tr. 16:7–21:25, 38:21–41:1 (Mar. 28, 2022) (Thonn testimony) (reviewing Promissory Note No. 4 and Promissory Note No. 7 and eliminating Perry as the signer of one or both); Hr'g Tr. 72:17–73:15 (Apr. 5, 2022) (Perry testimony).

72.     The Court finds that Perry did not consent to be bound by Promissory Note No. 7 and that Promissory Note No. 7 is not a valid or enforceable contract.  *See Keller v. Sisters of Charity of Incarnate Word*, 597 So. 2d 1113, 1115 (La. App. 2 Cir. 1992) (citing LA. CIV. CODE

arts. 1918, 1927, 1966 & 1971; *First Nat'l Bank of Shreveport v. Williams*, 346 So. 2d 257 (La. App. 3 Cir. 1977)).

### The 9th Street Property Leases, the Purported Instrument of Procuration, and the Purported 9th Street Joint Venture Agreement

73.     Starting in 2000, the 9th Street Property was left vacant for approximately 18 months.  Perry rented the property sporadically, and a mortgage continued to encumber the property.  *See* Hr'g Tr. 50:5–51:22 (Apr. 7, 2022).  At some point, Perry desired to renovate the 9th Street Property.  *See id.*

*The First 9th Street Lease*

74.     Dr. Alden introduced Darryl Fish ("Fish") to Perry and suggested that Fish lease the 9th Street Property, make repairs to the Property, and eventually buy the Property.  *See* Hr'g Tr. 138:20–139:3 (Mar. 28, 2022).

75.     Dr. Alden served as Fish's treating physician in association with a worker's compensation action that Fish had filed.  *See* Hr'g Tr. 195:18–200:8 (Mar. 28, 2022) (Fish testimony).

76.     On September 1, 2017, Perry executed a six-month residential lease (the "First 9th St. Lease") with Fish whereby Fish would reside at the 9th Street Property in exchange for total rent of $975.00 per month, comprised of cash payments of $350.00 monthly and the cash equivalent of $600.00 per month in labor for repairing and renovating the 9th Street Property at an hourly rate of $15.00 per hour for 40 hours per month.  *See* Stipulations, Nos. 32–35; Debtor Ex. 64.

77.     Dr. Alden drafted the First 9th St. Lease.  *See* Hr'g Tr. 139:4–6 (Mar. 28, 2022).

78.     Perry and Fish did not execute the First 9th St. Lease at the same time in one another's presence.  *See* Hr'g Tr. 145:7–16 (Mar. 28, 2022).

24

79.     After Perry signed the First 9th St. Lease as the lessor, Dr. Alden handwrote additional terms on the First 9th St. Lease—"Landlord to provide all materials for renovation. Tenant provides all labor"—and delivered the First 9th St. Lease to Fish to sign as the lessee.   *See* Debtor Ex. 64; Hr'g Tr. 145:7–146:4 (Mar. 28, 2022).

80.     Perry did not receive the original or a copy of the executed First 9th St. Lease.  *See* Hr'g Tr. 146:5–20 (Mar. 28, 2022).

81.     Fish accepted the 9th Street Property "as is" as of September 1, 2017, and became responsible for all maintenance and repairs of the interior and exterior of the 9th Street Property and agreed to be solely liable for the payment of improvements to the 9th Street Property unless otherwise agreed by Perry in writing.  *See* Stipulations, No. 38; Debtor Ex. 64.

82.      Under the First 9th St. Lease, Fish had the option to purchase the 9th Street Property during the term of the First 9th St. Lease for $150,000.00 if he gave written notice of his intent to exercise that option at least ten days prior to the expiration of the First 9th St. Lease or any extension of the First 9th St. Lease.  *See* Stipulations, Nos. 36–37; Debtor Ex. 64.

83.     The First 9th St. Lease expired by its terms and was transformed to a new month-to-month lease pursuant to Louisiana state law.  *See* Stipulations, No 39.

84.     Fish did not exercise his option to purchase the 9th Street Property under the terms of the First 9th St. Lease.  *See* Stipulations, No. 40.

85.     As of July 2018, Fish was in default of the First 9th St. Lease as he owed $3,485.00 in cash for past-due rent and had not performed his obligations under the First 9th St. Lease to repair and renovate the 9th Street Property.  *See* Stipulations, No. 41.

86.     Perry initiated state law eviction proceedings against Fish in 2019 (the "Eviction Action").  *See* Hr'g Tr. 146:5–148:14 (Mar. 28, 2022).

25

*The Second 9th St. Lease*

87.     During the Eviction Action, Perry discovered that Dr. Alden had executed a new twelve-month residential lease (the "Second 9th St. Lease") with Fish for the 9th Street Property. *See* Hr'g Tr. 148:3–14 (Mar. 28, 2022).

88.     Perry did not sign the Second 9th St. Lease; rather Dr. Alden executed the Second 9th St. Lease himself on behalf of "Perry Associates, LLC and Dennis Perry, Lessor" purportedly "pursuant to a power of attorney granted to William Alden individually and on behalf of Perry Associates, LLC by Dennis Perry, dated August 31, 2017." Debtor Ex. 65. The signature blocks are not dated; however, the text of the Second 9th St. Lease indicates that the Second 9th St. Lease "is made this 1st day of September, 2019." Debtor Ex. 65.

89.     Dr. Alden is the sole member of Perry Associates, LLC. *See* Hr'g Tr. 167:8–169:9 (Mar. 29, 2022).

90.     Dr. Alden drafted the Second 9th St. Lease. *See* Hr'g Tr. 130:1–7 (Mar. 28, 2022).

91.     The term of the Second 9th St. Lease is September 1, 2019, to August 31, 2020. *See* Debtor Ex. 65.

92.     The Second 9th St. Lease states that Fish "agrees to continue to pay directly to the Wells Fargo Mortgage Company, the sum of $875 per month towards the mortgage, with the payments beginning on September 1, 2019, as payment of rent for the property, for the term of this Lease/Option, and during any extensions thereof." Debtor Ex. 65.

93.     The Second 9th St. Lease contained an option for Fish to purchase the 9th Street Property at any time during the pendency of the Second 9th St. Lease upon written notice given at least ten days prior to the expiration of the term of the Second 9th St. Lease or any extension

thereof, but also allowed Fish, at his "discretion" to "transfer the purchase option to Perry Associates, LLC at any point in the contract or option period."  Debtor Ex. 65.

94.     Under the Second 9th St. Lease, Fish was responsible "for all maintenance, improvements and repairs to the property and will be reimbursed accordingly," but the terms of the Second 9th St. Lease also provide that "[t]he Lessor/Owner, Dennis Perry, shall be solely liable for re-imbursement of said improvements unless agreed in writing otherwise with the Lessee." Debtor Ex. 65.

95.     Fish never witnessed Perry sign any instrument of procuration or power of attorney or joint venture agreement.  *See* Hr'g Tr. 203:11–206:15 (Mar. 28, 2022) (Fish testimony).

96.     Adele Thonn provided expert testimony and a report as to whether Perry signed two documents each entitled "Instrument of Procuration" and dated August 31, 2017.  *See* Hr'g Tr. 16:5–55:13 (Mar. 28, 2022); Debtor Exs. 84–88, 91 & 97.

97.     Based upon Thonn's expert testimony and report as well as testimony provided by Fish and Perry, the Court finds that Perry did not sign either of the documents entitled "Instrument of Procuration" dated August 31, 2017.  *See* Hr'g Tr. 16:5–55:13 (Mar. 28, 2022) (Thonn testimony) (reviewing two documents purporting to be the "Instrument of Procuration" and eliminating Perry as the signer of one or both of them); Hr'g Tr. 148:3–19, 203:11–206:15 (Perry testimony) (Mar. 28, 2022); Debtor Ex. 84.

98.     Perry never granted Dr. Alden or Perry Associates, LLC agency authority or power of attorney to act on his behalf.  *See* Hr'g Tr. 16:5–55:13, 148:3–19, 203:11–206:15 (Mar. 28, 2022); Debtor Ex. 84.

99.     On December 10, 2019, Perry sent an e-mail and a text message to Dr. Alden revoking any procuration or power of attorney and requesting a full accounting of any actions Dr. Alden took in his purported agency capacity.  *See* Debtor Ex. 68.

100.     On March 12, 2020, counsel for Perry recorded a document in the mortgage records of Jefferson Parish, Louisiana, entitled "Revocation of Power of Attorney" and dated March 11, 2020, which identified the Instrument of Procuration dated August 31, 2017 as invalid.  *See* Debtor Ex. 69.   The Revocation of Power of Attorney was signed by Perry and witnessed by two individuals.  *See id.*

101.     Based on Thonn's expert testimony and report and the testimony offered by Perry and Fish, the Court finds that Perry did not consent to be bound by either document entitled "Instrument of Procuration" (together, the "Procuration") and that those documents are not valid or enforceable contracts.

102.     The Court further finds that the Second 9th St. Lease is not a valid or enforceable contract as Dr. Alden had no authority to enter the contract on behalf of Perry.

*The 9th St. Joint Venture Agreement*

103.     Also during the course of the Eviction Action, Patrick Sanders, an attorney then serving as counsel to Dr. Alden and Alden's corporate affiliates, gave to Perry a document captioned "Joint Venture Agreement" and purportedly dated August 31, 2017 (the "9th St. Joint Venture Agreement").  *See* Hr'g Tr. 51:23–53:3 (Apr. 7, 2022); Debtor Ex. 62.

104.     The counterparties to the 9th St. Joint Venture Agreement are listed as Perry and "Perry Associate LLC, a Louisiana limited liability companies [*sic*] represented herein by its duly authorized member, William W. Alden, MD, 2930 Canal Street, Suite 401, New Orleans LA 70119."  Debtor Ex. 62.

28

105.    Other copies of the 9th St. Joint Venture Agreement exist, having been filed in either the Eviction Action, or attached to a proof of claim filed in this bankruptcy case, or produced in discovery, and each having a different date:  August 8, August 18, and August 31, 2017.  *See* Debtor Ex. 62; Hr'g Tr. 51:23–61:13 (Apr. 7, 2022).

106.    Adele Thonn provided expert testimony and reports as to whether Perry signed any of the documents fashioned as the 9th St. Joint Venture Agreement.  *See* Hr'g Tr. 22:12–27:20 (Mar. 28, 2022); Debtor Exs. 62, 84 & 97.

107.    Based upon Thonn's expert testimony and report as well as testimony provided by Perry, the Court finds that Perry did not sign **any** of the documents fashioned as the 9th St. Joint Venture Agreement.  *See* Hr'g Tr. 22:12–27:20 (Mar. 28, 2022) (Thonn testimony) (comparing two documents purporting to be the 9th St. Joint Venture Agreement and eliminating Perry as the signer of one or both of them); Hr'g Tr. 51:23–61:13 (Apr. 7, 2022) (Perry testimony); Debtor Exs. 62, 84 & 97.

108.    The Court finds that Perry did not consent to be bound by any document purporting to be the 9th St. Joint Venture Agreement and that any version of the 9th St. Joint Venture Agreement is not a valid contract.  *See Keller v. Sisters of Charity of Incarnate Word*, 597 So. 2d 1113, 1115 (La. App. 2 Cir. 1992) (citing LA. CIV. CODE arts. 1918, 1927, 1966 & 1971; *First Nat'l Bank of Shreveport v. Williams*, 346 So. 2d 257 (La. App. 3 Cir. 1977)).

109.    The last rental payment made by Fish was made in September 2020.  *See* Stipulations, No. 54.

110.    On October 10, 2020, while Fish occupied the 9th Street Property, Jefferson Parish Zoning Commission issued a Complaint evidencing violations:

> Junk and debris on the Property, including but not limited to inoperative vehicles and vehicles with no license plates.  All exterior surfaces, including but not limited

> to door and window frames, cornices, porches, trim, balconies, decks and fences
> are not maintained in good condition.  Specifically, multiple boarded up windows
> around the house.

*See* Stipulations, No. 59.

111.    Fish continued to occupy the 9th Street Property without paying rent from October 2020 through September 2021.  *See* Stipulations, No. 55; *see also* Hr'g Tr. 152:10–23 (Mar. 28, 2022).

112.    Perry obtained a Judgment of Eviction against Fish from the Jefferson Parish Second Circuit Justice of the Peace on May 20, 2021.  *See* Hr'g Tr. 153:5–11 (Mar. 28, 2022); [Adv. No. 21-1024, Ex. D].

*Perry's Bankruptcy Filing, Post-Petition Motion Practice,
and Adversary Proceeding Against Fish*

113.    On November 30, 2020, Perry filed a petition for bankruptcy relief under the Small Business Reorganization Act of 2019, which added Subchapter V to Chapter 11 of the Bankruptcy Code ("Subchapter V").  [No. 20-11986, ECF Doc. 1].  The Office of the United States Trustee appointed a Subchapter V Trustee in the case pursuant to 11 U.S.C. § 1183(a).  [No. 20-11986, ECF Doc. 10].

114.    On March 2, 2021, Perry filed a motion to reject the First 9th Street Lease and the Second 9th Street Lease, to the extent that either one is valid and enforceable.  [No. 20-11986, ECF Doc. 102].  With no opposition, the Court granted that motion.  [No. 20-11986, ECF Doc. 152].

115.    On June 6, 2021, Perry filed a *Motion for Willful Violation of the Automatic Stay, for Sanctions and for Damages* (the "Stay Violation Motion"), [No. 20-11986, ECF Doc. 188], asserting that the 9th Street Property is property of the estate and that Fish continues to occupy the 9th Street Property with no legal basis upon which to do so.

116.    On June 24, 2021, Perry initiated an adversary proceeding against Fish, asserting claims for turnover of the 9th Street Property and damages pursuant to 11 U.S.C. § 542 and Louisiana state law (the "Turnover Adversary").  [Adv. No. 21-1024, ECF Doc. 1].  The Court consolidated those matters on July 21, 2021.  [No. 21-1024, ECF Doc. 5].

117.    At a hearing on August 27, 2021, to consider the issuance of a preliminary injunction to enjoin Fish from occupying the 9th Street Property, Fish consented to the entry of such injunction and agreed to vacate the premises by August 28, 2021.  [No. 20-11986, ECF Doc. 242].

**The August 2017 Sampson and Bonfouca Joint Venture Agreements**

118.    Concurrently with the transactions involving Promissory Note No. 3 and the illegal transfer of the Westbank Expressway Lot in August/September 2017, Perry entered into two other transactions with Dr. Alden's closely held company, Perry Associates, LLC.  *See* Hr'g Tr. 18:4–45:11 (Apr. 5, 2022).  The Court finds the testimony offered by Perry on these transactions to be credible.

*The Sampson JV Agreement*

119.    Prior to August 2017, Perry owned rental property located at 27420 Sampson Drive in Lacombe, Louisiana (the "Sampson Property").  The Sampson Property was encumbered by one mortgage held by Sun Finance Co., LLC, and Perry was in default under the terms of that mortgage.  *See* Hr'g Tr. 27:22–45:11 (Apr. 5, 2022).

120.    Dr. Alden proposed to pay off the mortgage and take ownership of the Sampson Property; Perry would renovate the property over the course of a year, at which time they would sell the property and split the proceeds.  *See id*.  To that end, on August 17, 2017, Perry sold the

Sampson Property to Perry Associates, LLC for $46,199.82, the amount owing under the mortgage. *See id.*; Debtor Ex. 48.

121.    The same day, Perry and Dr. Alden on behalf of Perry Associates, LLC, entered into a joint venture agreement memorializing the terms of their agreement to renovate and sell the Sampson Property and split the proceeds (the "Sampson JV Agreement"). *See* Hr'g Tr. 27:22–45:11 (Apr. 5, 2022); Debtor Ex. 49. The Sampson JV Agreement included the following provision:

> Perry Associates, LLC, having acquired ownership of said property from Perry as described above, , [*sic*] shall remain sole owner of said property for a period of three hundred and sixty five (365) days after the closing of the original act of sale. Any time during said period of time, Perry Associates, LLC, can list said property for sale at its own discretion, at a price agreeable to both Venturers. If said property has not sold within said time period, then beginning on the three hundred and sixty sixth (366) day, either party has the option to request that the property be sold at public auction, with appraisement, and any profit or losses to be then divided equally between Perry and Perry Associates, LLC. Either venturer, beginning on the three hundred and sixty sixth (366) day, may also have the option to purchase said property for the appraised value of the property, said appraisal having been obtained at their own costs by the party seeking to acquire the property from a licensed Louisiana appraiser. Any profit or losses would similarly be divided equally between both parties. If the selling party does not agree to the appraised value of the property, he may commission a separate appraisal at his own expense, and the selling price shall be the median price of the two appraisals.

Debtor Ex. 49.

122.    The Sampson JV Agreement also contained the following provision:

> No profits shall be distributed or losses allocated until the sale of all properties formerly owned by venturer Dennis Perry and financed by William Alden, MD, through either Crescent City Property Redevelopment Associates, LLC or Perry Associates, LLC; including but not limited to the properties located at 27420 Sampson Dr., Lacombe, LA, and 3303 Bonfouca Dr., Slidell, La., each of which is subject to a Joint Venture Agreement in substantial conformity with this agreement, copies of which are attached hereto as Exhibits B and C.

Debtor Ex. 49.

123.    Dr. Alden leased the Sampson Property to one of his wholly owned affiliates, Crescent City Property Redevelopment Associates, LLC.  *See* Debtor Ex. 50.

*The Bonfouca JV Agreement*

124.    Prior to August 2017, Perry owned rental property located at 3303 Bonfouca Drive in Slidell, Louisiana (the "<u>Bonfouca Property</u>") and, in August 2017, Perry's daughter was living in the property and paying rent.  *See* Hr'g Tr. 18:4–45:11 (Apr. 5, 2022).

125.    In August 2017, the Bonfouca Property was encumbered by two mortgages held by Sun Finance Co., LLC and Perry was in default under the terms of those mortgages.  *See id*.

126.    As with the Sampson Property, Dr. Alden proposed to pay off the mortgages and take ownership of the Bonfouca Property, while Perry would renovate the property over the course of a year, at which time they would sell the property and split the proceeds.  *See id*.  To that end, on August 17, 2017, Perry sold the Bonfouca Property to Perry Associates, LLC for $162,431.74, the amount owing under the two mortgages.  *See id.*; Debtor Ex. 44.

127.    The same day, Perry and Dr. Alden on behalf of Perry Associates, LLC, entered into a joint venture agreement memorializing the terms of their agreement to renovate and sell the Bonfouca Property and split the proceeds (the "<u>Bonfouca JV Agreement</u>").  *See* Hr'g Tr. 18:4–45:11 (Apr. 5, 2022); Debtor Ex. 46.  The Bonfouca JV Agreement included the following provision:

> Perry Associates, LLC, having acquired ownership of said property from Perry as described above, , [*sic*] shall remain sole owner of said property for a period of three hundred and sixty five (365) days after the closing of the original act of sale. Any time during said period of time, Perry Associates, LLC, can list said property for sale at its own discretion, at a price agreeable to both Venturers.  If said property has not sold within said time period, then beginning on the three hundred and sixty sixth (366) day, either party has the option to request that the property be sold at public auction, with appraisement, and any profit or losses to be then divided equally between Perry and Perry Associates, LLC.  Either venturer, beginning on the three hundred and sixty sixth (366) day, may also have the option to purchase

> said property for the appraised value of the property, said appraisal having been obtained at their own costs by the party seeking to acquire the property from a licensed Louisiana appraiser. Any profit or losses would similarly be divided equally between both parties. If the selling party does not agree to the appraised value of the property, he may commission a separate appraisal at his own expense, and the selling price shall be the median price of the two appraisals.

Debtor Ex. 46.

128. The Bonfouca JV Agreement also contained the following provision, which differed from the similar provision in the Sampson JV Agreement, and added the requirement that the Palm Drive Property also be sold prior to any profits being distributed:

> No profits shall be distributed or losses allocated until the sale of all properties formerly owned by venturer Dennis Perry and financed by William Alden, MD, through Perry associates, LLC; including but not limited to the properties located at 27420 Sampson Dr., Lacombe, LA, and 3065 Palm Dr., Slidell, LA., each of which is subject to a Joint Venture Agreement in substantial conformity with this agreement, copies of which are attached hereto as Exhibits B and C.

Debtor Ex. 46.

129. None of the properties—the Palm Drive Property, the Sampson Property, or the Bonfouca Property—were ever sold prior to Perry's bankruptcy filing in November 2020, despite Perry's requests. *See* Hr'g Tr. 57:11–61:6 (Mar. 29, 2022); Hr'g Tr. 18:4–45:11 (Apr. 5, 2022).

**Prepetition Lawsuits Against Perry and Deals on Wheels, LLC**

130. On April 4, 2019, Dr. Alden on behalf of six closely held corporate entities filed a *Petition for Damages, for Executory Process, and for Suit on a Promissory Note* in a Louisiana state court, asserting claims to recover secured and unsecured debts owed by Dennis Perry and Deals on Wheels related to the transactions between them described herein. *See* Debtor Ex. 72 (*Perry Assocs., LLC, et al. v. Perry & Deals on Wheels, LLC* (No. 2019-11784, 22nd J.D.C. filed Apr. 4, 2019)). That case was removed and referred to this Court on January 5, 2021. [Adv. No. 21-1002, ECF Doc. 1].

34

131.    On May 14, 2020, Dr. Alden filed a petition in a Louisiana state court, seeking to foreclose on the properties securing repayment of debt under the Collateral Mortgage ("Dr. Alden's Foreclosure Action").  *See Alden, et al. v. Perry* (No. 806-585, 24th J.D.C. filed May 14, 2020).  The public docket reveals that on August 14, 2020, Perry moved to temporarily enjoin Dr. Alden's Foreclosure Action.  *See id.*  The state court took the motion under advisement and on September 18, 2020, issued an order denying it, stating that Perry had not made the requisite showing to prevail on the motion.  *See id.*  Perry moved for rehearing of that ruling.  *See id.*  The state court held an evidentiary hearing on Perry's motion for rehearing on November 17, 2020, but did not issue a ruling.  *See id.*  Perry filed for bankruptcy relief in this Court on November 30, 2020, thereby staying Dr. Alden's Foreclosure Action.  *See id.*  The state court did not issue a final order in Dr. Alden's Foreclosure Action.  *See id.*; *see also* Hr'g Tr. 88:25–97:3 (Apr. 7, 2022).

## CONCLUSIONS OF LAW

### A.  Evidentiary Rulings

"Motions in limine allow a trial court to make a pretrial ruling on the admissibility and relevance of evidence."  *Young Again Prods., Inc. v. Supplement Spot, LLC (In re Supplement Spot, LLC)*, No. 07-03019, 2009 WL 2006834, at *9 (Bankr. S.D. Tex. July 8, 2009) (citations omitted).  "A motion in limine that seeks to exclude broad categories of evidence is rarely granted." *Id.* (citations omitted).  Indeed, "[u]nless the evidence at issue is clearly inadmissible on all potential grounds, it should not be excluded in limine."  *Id.* (citations omitted).

For the reasons stated on the record, the Court denied the Alden Creditors' *Motion in Limine To Exclude Testimony of Patrick Gros*, [Adv. No. 22-1002, ECF Doc. 110], and deferred ruling on the remaining motions in limine, finding that the relief sought was best addressed in the context of trial.  *See* Hr'g Tr. 3:14–8:8 (Mar. 28, 2022).  Throughout the course of the Trial, the

parties raised evidentiary objections and the Court ruled on them; therefore, to the extent that any unresolved portions of the remaining motions in limine are still pending, the Court denies the relief. [No. 20-11986, ECF Docs. 108, 109, 111, 112, 113 & 115].

### B.  Rulings on Claim Objections

Perry filed for bankruptcy protection under Subchapter V of Chapter 11 of the Bankruptcy Code on November 30, 2020.  [No. 20-11986, ECF Doc. 1].  The Court entered an Order setting January 29, 2021, as the last day for non-governmental creditors to file proofs of claim against the estate.  [No. 20-11986, ECF Doc. 12]. The claim-allowance process is governed by §§ 501 and 502 of the Bankruptcy Code (defining the claims that are allowed and those disallowed) and by Rules 3001 and 3002 of the Federal Rules of Bankruptcy Procedure (prescribing the procedure for adjudicating claims and outlining places and deadlines for filing proofs of claim).  A proof of claim is deemed allowed unless a party in interest objects to its allowance.  *See* 11 U.S.C. § 502(a). Section 502(b) provides nine enumerated bases upon which to object to a proof of claim.  Rule 3001 identifies the information required to be attached to a proof of claim to support a creditor's claim.  *See* Fed. R. Bankr. P. 3001(c) & (d).

Importantly, "Rule 3001 allocates the burden of proof with respect to a proof of claim for which an objecting party has raised an objection that would warrant disallowance under § 502(b)." *In re Today's Destiny, Inc.*, No. 05-90080, 2008 WL 5479109, at *2 (Bankr. S.D. Tex. Nov. 26, 2008).  "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).  "If a proof of claim has prima facie validity, the objecting party must produce sufficient evidence to overcome the proof of claim's prima facie validity."  *In re Today's Destiny, Inc.*, 2008 WL 5479109, at *4 (citing 11 U.S.C. § 502(a); *In re Armstrong*, 320 B.R. 97, 102–03 (N.D. Tex. 2005)).  "If the

objecting party puts forth sufficient evidence to rebut a proof of claim's prima facie validity, the

claim is not per se denied." *Id*. (citations omitted). "Rather, the proof of claim simply loses the

presumption of validity." *Id*. (citation omitted). "At the evidentiary hearing, who bears the burden

of proof and the standard of proof are determined by applicable state law." *Id*. (citations omitted).

"The presumption treating the proof of claim as prima facie evidence of validity and amount

operated to create a mere rebuttable presumption. If rebutted, then the ultimate burden of proof is

on the claimant." *Id*. (quoting *In re Garner*, 246 B.R. 617, 622 (B.A.P. 9th Cir. 2000)).

> 1. *Debtor's Objection to Proof of Claim No. 22, the Stay Violation Motion, the Turnover Adversary, and the Criminal Referral Motion*

On January 19, 2021, Fish filed a proof of claim against the estate, asserting a secured

claim of $45,150 for "Construction work to make rental habitable plus purchase option." [No. 20-

11986, Proof of Claim No. 22]. Of the $45,150, Fish asserted $31,500 as a secured claim under a

lease agreement and $13,650 as a priority unsecured claim for prepetition wages, salaries, or

commissions. *See id*. Fish attached as exhibits to Proof of Claim No. 22 the First 9th St. Lease,

the Second 9th St. Lease, and the 9th St. Joint Venture Agreement. *See id*.

On February 24, 2021, Perry filed an objection to Proof of Claim No. 22, asserting that (i)

the First 9th St. Lease had expired by its own terms without Fish having properly exercised the

option to purchase the 9th St. Property, (ii) the Second 9th St. Lease was executed without Perry's

authority and is not enforceable, and (iii) Perry had initiated eviction proceedings against Fish for

failure to perform renovations and pay rent due under the First 9th St. Lease. [No. 20-11986, ECF

Doc. 86]. On May 5, 2021, Fish through counsel filed a response to Perry's claim objection and

asserted the validity and enforceability of the Second 9th Street Lease by relying heavily on an the

Procuration allegedly giving Dr. Alden agency to enter into the lease on Perry's behalf. [No. 20-

11986, ECF Doc. 168]. That response attached a copy of a *Petition for Declaratory Judgment and*

*for Damages* filed on February 19, 2020, in a Louisiana state court, asserting claims associated with the First and Second 9th St. Leases on Fish's behalf by attorney Patrick Sanders (who also represented Dr. Alden, *see infra*). [No. 20-11986, ECF Doc. 168, Ex. A]. The response also attached an unsigned, undated document purportedly listing work performed and materials purchased by Fish on the 9th Street Property. [No. 20-11986, ECF Doc. 168, Ex. B]. Although Fish did not formally amend Proof of Claim No. 22, he conceded in his response that any amounts owed to him by Perry did not qualify as a secured or priority unsecured claim under state law or the Bankruptcy Code, but rather qualified as a general unsecured claim. [No. 20-11986, ECF Doc. 168 & Hr'g Tr. Min. 00:01–06:45 (May 12, 2021)].

After a four-day trial on the merits of these consolidated matters, the Court finds that the Procuration, the Second 9th Street Lease, and the 9th Street Joint Venture Agreement are all invalid and unenforceable contracts. *See supra* ¶¶ 9, 73–108. Per the parties' Stipulations, (i) the First 9th Street Lease expired by its own terms transformed to a month-to-month lease on March 1, 2017; (ii) Fish did not exercise his option to purchase the 9th Street Property under the terms of the First 9th St. Lease; and (iii) as of July 2018, Fish was in default of the First 9th St. Lease as he owed $3,485.00 in cash for past-due rent and had not performed his obligations under the First 9th St. Lease to repair and renovate the 9th Street Property. *See* Stipulations, Nos. 33–41. The record indicates that Perry initiated state law eviction proceedings against Fish in 2019 and obtained a Judgment of Eviction against Fish on May 20, 2021. *See supra* ¶¶ 86 & 112. Finally, the Court was unpersuaded by the unreliable and incomplete evidence submitted to the Court regarding the current condition of the 9th Street Property and finds that Perry did not meet his burden to show the decrease in valuation of that property during the time that Fish occupied the property.

38

Given those stipulations and findings, the Court sustains Perry's objection to Proof of Claim No. 22 and disallows the claim in its entirety.  Further, as to the claims asserted in the Turnover Adversary (Adv. No. 21-1024) that have been consolidated with the contested matter associated with Proof of Claim No. 22:

- The Court denies as moot Count One, requesting turnover of the 9th St. Property to the Debtor pursuant to 11 U.S.C. § 542;

- The Court grants Count Two, requesting damages for Fish's failure to pay the cash rent owed under the First 9th St. Lease, and assesses judgment against Fish and in favor of Perry in the total amount of $8,735, representing $3,485 in stipulated rental arrears up to July 2018 plus 25 months of unpaid rent at $350 per month during Fish's continued occupancy of the 9th Street Property between July 2018 and August 2021; and

- The Court denies Count Three in its entirety.

The Court denies the Stay Violation Motion as moot.  And, given the Court's findings herein, the Court finds that the Criminal Referral Motion is not well-taken and denies the motion.

### 2. Debtor's Objection to Proof of Claim No. 25

On January 29, 2021, attorney Sanders filed on behalf of creditor "Perry Associates, LLC Joint Venture Agreements" a proof of claim against the estate, asserting an unsecured claim of $273,649.66 for "Monies advanced for joint venture agreements to avoid foreclosure."  [No. 20-11986, Proof of Claim No. 25].  No one executed Proof of Claim No. 25 as required by Bankruptcy Rule 3001(b).  See id.  Attached to Proof of Claim 25 was (i) the Bonfouca JV Agreement; (ii) the Sampson JV Agreement; (iii) an unsigned document purporting to be a "Joint Venture Agreement" related to the Westbank Expressway Lot; (iv) the Westbank Expressway Quit Claim Deed; (v) a copy of a front of a check purportedly written to Dennis Perry by Dr. Alden in the amount of $2,200 with "Purchase of 4025 Westbank Lot" scribbled in the memo line; (vi) the 9th St. Joint Venture Agreement; and (vii) a document entitled "Itemized Statements on Joint Venture Agreements by and Between and [sic] Dennis A Perry, Debtor, and Perry Associates, LLC and

39

Crescent City Property Redevelopment Association, LLC." *See id.*  The claimant did not attach the Palm Drive JV Agreement to Proof of Claim No. 25.

On February 22, 2021, Perry filed an objection to Proof of Claim No. 25, attacking the validity of several of the joint venture agreements attached to the proof of claim.  [No. 20-11986, ECF Doc. 81].  On March 28, 2021, Perry supplemented his objection and asserted that Proof of Claim No. 25 should be disallowed in its entirety for failing to meet the requirements of Bankruptcy Rule 3001(b), or alternatively, Proof of Claim No. 25 should not be afforded the presumption of facial validity.  [No. 20-11986, ECF Doc. 156]; *see also In re Tran*, 369 B.R. 312, 318 (S.D. Tex. 2007); *In re Gilbreath*, 395 B.R. at 361–67.  On May 5, 2021, the claimant amended Proof of Claim No. 25 without leave of Court or Perry's consent, changed the name of the creditor to "William W. Alden" and included the signature of attorney Sanders as the executor of the proof of claim.  [No. 20-11986, ECF Docs. 25-2 & 25-3].  On November 16, 2021, the claimant again amended its proof of claim without leave of Court or Perry's consent to increase its claim amount to $184,204.04 and to recharacterize the claim as secured rather than unsecured.  [No. 20-11986, Proof of Claim No. 25-4].[3]

---

[3]     The filing of an objection to a proof of claim initiates a contested matter under Bankruptcy Rule 9014, which, in turn, according to some courts, makes applicable certain procedural rules contained in Part VII of the Bankruptcy Rules.  See FED. R. BANKR. P. 3007 & 9014; *In re Gilbreath*, 395 B.R. 356, 365 (Bankr. S.D. Tex. 2008).  The application of Bankruptcy Rule 7015 to the contested matters here would "require[] claimants to obtain 'the opposing party's written consent or the court's leave' to amend their claim after being served with a response (here, a written objection)."  *In re Gilbreath*, 395 B.R. at 366 (quoting Federal Rule of Civil Procedure 15, made applicable by Bankruptcy Rule 7015).  Even if Bankruptcy Rule 7015 does not strictly apply here, however, this Court's "equitable powers play some role in determining whether or not to allow an amendment filed without leave or consent in a contested matter." *Id.* at 366–67 (citing Rule 9014(c)).  The Court recognizes the inequity of permitting the Alden Entities to amend its deficient claims without leave of Court or the Debtor's consent.  The Court exercises its discretion and will allow the amendments to the Alden Entities' proofs of claim, but does not afford those proofs of claim the presumption of facial validity.  *See United Ind. Sch. Dist. v. Vitro Asset Corp. (In re Vitro Asset Corp.)*, 656 F. App'x 717, 722 n.1 (5th Cir. 2016) ("[J]ust like an amended pleading, an amended proof of claim supersedes the original filing and deprives the earlier filing of legal effect." (citing *In re Enron Corp*., No. 01-B-16034, 2005 WL 3874285, at *1 (Bankr. S.D.N.Y. Oct. 5, 2005); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).

40

The burden of proof to justify the amounts claimed on Proof of Claim No. 25 rests with the claimant, Dr. Alden. As an initial matter, based on the evidence presented to the Court over the course of the four-day trial on these consolidated contested matters, the Court finds that the Westbank Expressway Quit Claim Deed and the 9th Street Joint Venture Agreement are not valid or enforceable. *See supra* ¶¶ 9–117. Thus, the Court finds that the claimant may not recover sums from the estate under those invalid documents. As to the other bases for recovery, attorney Sanders testified as fact witness regarding the veracity of the allegations contained in the proof of claim. *See In re Rodriguez*, No. 10-70606, 2013 WL 2450925, at *3–4 (Bankr. S.D. Tex. June 5, 2013). Sanders testified that he had no firsthand, personal knowledge of the authenticity of any of the joint venture agreements or other documents attached to any of the proofs of claim he filed on behalf of Dr. Alden's entities and could not testify as to the basis or accuracy of any of the amounts alleged to be owed by Perry to Dr. Alden or his entities under those documents. *See* Hr'g Tr. 129:21–148:15 (Mar. 29, 2022). Essentially, Sanders testified that he blindly filed the documents given to him by his client, Dr. Alden, without vetting the documents or verifying the bases for the amounts allegedly owed. *See id.*

Douglas Ellis also testified that he is a friend and informal business partner—but not an accountant—who was called upon "to assist in providing information to Mr. Sanders with regard to the various proofs of claim" that Dr. Alden and/or his entities filed in this case. *See* Hr'g 125:17–139:3 (Apr. 5, 2022); 252:6–255:16 (Apr. 7, 2022). Like Sanders, Ellis testified that he relied heavily on information given to him by Dr. Alden in calculating amounts claimed against the estate and that, although he reviewed Dr. Alden's entities' bank records for checks written to Dennis Perry over the years, he had no way of knowing the purpose of the checks and whether any sums were paid by Perry to satisfy any debts that might be owed. *See* Hr'g 125:17–139:3 (Apr. 5, 2022);

252:6–255:16 (Apr. 7, 2022). In other words, Ellis compiled only a fraction of a one-sided ledger, calculated interest on that portion based on some arbitrary rate provided by Dr. Alden, and provided that information to Sanders to attach to the proofs of claim. *See* Hr'g 125:17–139:3 (Apr. 5, 2022); 252:6–255:16 (Apr. 7, 2022). The Court finds Ellis's calculations and his testimony associated therewith to be not credible and disregards it entirely. *See Olympic Coast Inv. Inc. v. Wright (In re Wright),* 256 B.R. 626, 638 (Bankr. D. Mont. 2000) (citing *Bose Corp. v. Consumers Union of United States, Inc*., 466 U.S. 485, 512 (1984)).

Dr. Alden also testified regarding the bases for the amounts claimed in Proof of Claim No. 25. *See* Hr'g Tr. 167:11–194:15 (Mar. 29, 2023); Hr'g Tr. 139:12–184:22 (Apr. 5, 2022). Although Dr. Alden summarily asserted that he incurred debt and paid for taxes, insurance, and certain work performed on various properties that were the objects of joint ventures with Perry, he produced no loan agreements, tax receipts, insurance policies, work invoices, or receipts for expenses associated with any of those properties. *See* Hr'g Tr. 167:11–194:15 (Mar. 29, 2023); Hr'g Tr. 139:12–184:22 (Apr. 5, 2022). Dr. Alden produced one spreadsheet that he prepared for litigation purposes listing amounts he alleges he paid to renovate and maintain the Palm Drive Property; however, no receipts or invoices were provided to justify the alleged costs incurred. *See* Alden Ex. Y; Hr'g Tr. 139:12–184:22 (Apr. 5, 2022). Dr. Alden also showed the Court copies of thirty checks written to various individuals, including Fish, each in an amount less than $300, and asserted that those checks were written for renovations performed on the Sampson Property; however, nothing but Dr. Alden's testimony tied those checks to the Sampson Property. *See* Alden Ex. GGG; Hr'g Tr. 139:12–184:22 (Apr. 5, 2022). As stated above in the Court's findings of fact, the Court finds Dr. Alden to be an evasive, untrustworthy, and most unreliable witness and disregards his testimony. *See Bose Corp. v. Consumers Union of United States, Inc*., 466 U.S.

42

485, 512 (1984) ("[W]hen the testimony of a witness is not believed, the trier of fact may simply disregard it.").

Thus, the Court finds that Dr. Alden failed to satisfy his burden to show that he is owed any amounts asserted in Proof of Claim No. 25.  Therefore, the Court sustains Perry's objection and disallows Proof of Claim No. 25 in its entirety.

### 3. Objection to Proof of Claim No. 26

On January 29, 2021, attorney Sanders filed on behalf of creditor "Perry Associates, LLC Joint Venture Agreements" a proof of claim against the estate, identical to Proof of Claim 25 (before amendments), also asserting an unsecured claim of $273,649.66 for "Monies advanced for joint venture agreements to avoid foreclosure."  [No. 20-11986, Proof of Claim No. 26].  Like Proof of Claim No. 25, no one executed Proof of Claim 26 as required by Bankruptcy Rule 3001(b).  *See id.*  Attached to Proof of Claim 26, however, was (i) a document entitled "Principal and Interest Due on Collateral Mortgage"; (ii) the NextGear Promissory Note and Collateral Mortgage dated June 2015; and (iii) Promissory Note No. 5 dated November 2017.  *See id.*

On February 22, 2021, Perry filed an objection to Proof of Claim No. 26, asserting that it should be disallowed as duplicative of Proof of Claim No. 26.  [No. 20-11986, ECF Doc. 69].  On April 29, 2021, Perry supplemented his objection and asserted that unsigned Proof of Claim No. 26 should be disallowed in its entirety for failing to meet the requirements of Bankruptcy Rule 3001(b), or, alternatively, should not be afforded the presumption of facial validity.  [No. 20-11986, ECF Doc. 156].  On May 5, 2021, the claimant amended Proof of Claim No. 26 without leave of Court or Perry's consent, changed the name of the creditor to "William W. Alden" and included the signature of attorney Sanders as the executor of the proof of claim.  [No. 20-11986, ECF Docs. 26-2 & 26-3].  On November 16, 2021, the claimant again amended its proof of claim

without leave of Court or Perry's consent to reduce its claim amount to $150,128.56, to change the basis of the claim to "money loaned," and to recharacterize the claim as secured rather than unsecured. [No. 20-11986, Proof of Claim No. 26-4]. Additionally, the only document attached to the superseding Proof of Claim No. 26 is a document entitled "Principal and Interest Due on Collateral Mortgage." *See id.*

The burden of proof to justify the amounts claimed on Proof of Claim No. 26 rests with the claimant, Dr. Alden.[4] Based on the evidence presented to the Court over the course of the four-day trial on these consolidated contested matters, the Court finds that finds that the debt owed pursuant to the NextGear Promissory Note has been satisfied and that the Collateral Mortgage should be cancelled/released. *See supra* ¶¶ 17–42. Thus, the Court finds that Dr. Alden failed to satisfy his burden to show that he is owed any amounts asserted in Proof of Claim No. 26. The Court sustains Perry's objection and disallows Proof of Claim No. 26 in its entirety.

### 4. Objection to Proof of Claim No. 27

On January 29, 2021, attorney Sanders filed a proof of claim against the estate on behalf of Private Connection Auto, LLC, asserting a secured claim in the amount of $35,689 for "Monies owed from automobile transactions." [No. 20-10846, Proof of Claim No. 27]. The basis for the claim's secured status was listed as "Contract between the parties as per promissory notes." *See id*. Attached to Proof of Claim No. 27 were two unsigned, undated documents, one entitled "Accounting for Automobile Sales" and the other entitled "Accounting for Cars." *See id*. Like other proofs of claim filed by Sanders in this case, no one executed Proof of Claim No. 27 as required by Bankruptcy Rule 3001(b). *See id*.

---

[4] *See supra* note 3.

On February 22, 2021, Perry filed an objection to Proof of Claim No. 27, asserting that Private Connection Auto, LLC had conducted no business with Perry and disputing the amount of the debt owed by Perry.  [No. 20-11986, ECF Doc. 71].  On April 29, 2021, Perry supplemented his claim objection and asserted that unsigned Proof of Claim No. 27 should be disallowed in its entirety for failing to meet the requirements of Bankruptcy Rule 3001(b), or, alternatively, should not be afforded the presumption of facial validity.  [No. 20-11986, ECF Doc. 156].  On November 17, 2021, without leave of Court or Perry's consent, the creditor amended Proof of Claim No. 27 to increase the amount of the claim from $35,689 to $76,664, and to replace the two former exhibits with another unsigned, undated document entitled "Deals-on-Wheels Purchases & Consignments."  [No. 20-11986, Proof of Claim No. 27-2].

The burden of proof to justify the amounts claimed on superseding Proof of Claim No. 27 rests with the claimant, Private Connection Auto, LLC.[5]  Over the course of the four-day trial, no credible documentary evidence or testimony was presented to the Court proving the transfer or sale of vehicles or boats, identifying the terms of any joint venture between Dr. Alden and Perry concerning vehicles or boats, proving any expenditures associated with those joint ventures, or proving the granting and perfection of any security interests in vehicles or boats by Perry to Dr. Alden.  *See supra* ¶ 68.  Therefore, the Court finds that Private Connection Auto, LLC failed to carry its burden to show it is entitled to any amounts claimed in Proof of Claim No. 27.  The Court sustains Perry's objection and disallows Proof of Claim No. 27 in its entirety.

### 5.  *Objection to Proof of Claim No. 28*

On January 29, 2021, attorney Sanders filed a proof of claim against the estate on behalf of Private Connection Auto, LLC, identical to Proof of Claim No. 27, and attached copies of

---

[5]        *See supra* note 3.

various checks, car titles, and receipts to the proof of claim. [No. 20-10846, Proof of Claim No. 28]. Like other proofs of claim filed by Sanders in this case, no one executed Proof of Claim No. 28 as required by Bankruptcy Rule 3001(b). *See id*.

On February 22, 2021, Perry filed an objection to Proof of Claim No. 28, asserting that Proof of Claim No. 28 is duplicative of Proof of Claim No. 27. [No. 20-11986, ECF Doc. 73]. On April 29, 2021, Perry supplemented his claim objection and asserted that unsigned Proof of Claim No. 28 should be disallowed in its entirety for failing to meet the requirements of Bankruptcy Rule 3001(b), or, alternatively, should not be afforded the presumption of facial validity. [No. 20-11986, ECF Doc. 156]. On May 5, 2021, without leave of Court or Perry's consent, Sanders amended Proof of Claim No. 28 to include his signature as the attorney for the creditor, and removed all exhibits attached to the proof of claim. [No. 20-11986, ECF Doc. 71-2].

The burden of proof to justify the amounts claimed on superseding Proof of Claim No. 28 rests with the claimant, Private Connection Auto, LLC.[6] The Court finds that the superseding Proof of Claim No. 28 filed by Sanders on behalf of Private Connection Auto, LLC is duplicative of Proof of Claim No. 27; therefore, the Court sustains Perry's objection to Proof of Claim No. 28 and disallows it in its entirety.

### *6. Objection to Proof of Claim No. 29*

On January 29, 2021, attorney Sanders filed a proof of claim against the estate on behalf of Crescent City Property Redevelopment Association, LLC, asserting an unsecured claim of $125,961.87 for "Monies loaned." [No. 20-11986, Proof of Claim No. 29]. Like other proofs of claim filed by Sanders, no one executed Proof of Claim No. 29 as required by Bankruptcy Rule 3001(b). *See id*. Attached to Proof of Claim No. 29 were (i) copies of 60 checks (some front and

---

[6] *See supra* note 3.

back), written to Perry or Deals on Wheels by payor Crescent City Property Redevelopment Association LLC, 4330 State Street Drive LLC, South Jefferson Davis Parkway LLC, Private Connection Property Inc., or Crescent City Medical Services Inc., and all purportedly signed by Dr. Alden; (ii) a one-page document entitled "Unsecured Loans," purporting to itemize the principal and interest owed under unsecured loans; and (iii) a document entitled "Loans To and Payments From Dennis Perry." *See id*.

On February 22, 2021, Perry filed an objection to Proof of Claim No. 29, asserting that the claimant did not attach a copy of the writing or writings upon which the claim is based as required by Bankruptcy Rule 3001(c), objecting to the standing of Crescent City Property Redevelopment Association LLC to claim amounts allegedly advanced by other entities, and asserting that amounts claimed in Proof of Claim No. 29 are duplicative of amounts claimed in other proofs of claim. [No. 20-11986, ECF Doc. 75]. On April 29, 2021, Perry supplemented his claim objection and asserted that unsigned Proof of Claim No. 29 should be disallowed in its entirety for failing to meet the requirements of Bankruptcy Rule 3001(b), or, alternatively, should not be afforded the presumption of facial validity. [No. 20-11986, ECF Doc. 156]. On November 16, 2021, without leave of Court or Perry's consent, the claimant amended Proof of Claim No. 29, reducing the amount of the claim to $1,100 and attaching only an untitled, unsigned document with four ledger entries on it. [No. 20-11986, Proof of Claim No. 29-2]. That untitled, unsigned documents asserts that Crescent City Property Redevelopment Association LLC loaned Perry $5,500 on July 15, 2018, which was repaid in full on July 17, 2018, and then loaned $1,100 to Perry on September 18, 2018, which has not been repaid. [No. 20-11986, Proof of Claim No. 29-2].

Crescent City Property Redevelopment Association LLC bears the burden of showing that it is entitled to the amount claimed on superseding Proof of Claim No. 29.[7]  Other than his own testimony that he loaned money to Perry between December 2012 and September 2018, *see* Hr'g Tr. 4:18–22 (Apr. 7, 2022), Dr. Alden, as the corporate representative of Crescent City Property Redevelopment Association LLC, presented no document that evidences the loan or the right to payment.  As stated above, the Court does not find Dr. Alden to be a credible witness and disregards his testimony.  The Court finds that the creditor has failed to carry its burden to show it is owed any amounts under Proof of Claim No. 29 and thus sustains Perry's objection and disallows Proof of Claim No. 29 in its entirety.

### 7.  *Objection to Proof of Claim No. 31*

On January 29, 2021, attorney Sanders filed a proof of claim against the estate on behalf of Dr. Alden, asserting an unsecured claim of $27,785.96 for "NSF check, materials paid for, monies misappropriated by Debtor."  [No. 20-11986, Proof of Claim No. 31].  Like other proofs of claim filed by Sanders, no one executed Proof of Claim No. 31 as required by Bankruptcy Rule 3001(b).  *See id.*  Attached to Proof of Claim No. 31 was a one-page document, not dated or signed, entitled "Miscellaneous Debts" which alleged amounts owed for (i) "Parish penalty charges for failure to forward tax bills"; (ii) "Materials for cement work on Star Motel"; (iii) "NSF Check"; (iv) "Credit Card Charges by Perry for Auto Parts"; (v) "Proceeds from sign rental after sale of Westbank property"; and (vi) "Legal expenses to recover damages from sign company."  *See id.*

On February 22, 2021, Perry filed an objection to Proof of Claim No. 31, asserting that the claimant did not attach a copy of the writing or writings upon which the claim is based as required by Bankruptcy Rule 3001(c), or show that the claimant even incurred the debts listed on the exhibit

---

[7]        *See supra* note 3.

entitled "Miscellaneous Debts."   [No. 20-11986, ECF Doc. 77].   On April 29, 2021, Perry supplemented his claim objection and asserted that unsigned Proof of Claim No. 31 should be disallowed in its entirety for failing to meet the requirements of Bankruptcy Rule 3001(b), or, alternatively, should not be afforded the presumption of facial validity.  [No. 20-11986, ECF Doc. 156].  On May 5, 2021, without leave of Court or Perry's consent, the claimant amended Proof of Claim No. 31, added Sanders' signature as Dr. Alden's attorney and omitted the exhibit entitled "Miscellaneous Debts."  [No. 20-11986, Proof of Claim No. 31-2].  On November 16, 2021, without leave of Court or Perry's consent, the claimant again amended Proof of Claim No. 31, to reattach the exhibit entitled "Miscellaneous Debts."  [No. 20-11986, Proof of Claim No. 31-2].

The burden of proof to justify the amounts claimed on Proof of Claim No. 31 rests with the claimant, Dr. Alden.[8]  Although Patrick Sanders testified as to the bases and veracity of the claims alleged in Proof of Claim No. 31, the Court gives no weight to his testimony because Sanders had no firsthand, personal knowledge or understanding of the bases for the amounts claimed.  *See* Hr'g Tr. 168:24–176:8 (Apr. 7, 2022).  Further, without receipts or reliable documents of any sort to establish the basis for the claims made in Proof of Claim No. 31, the Court is left only with the competing testimonies of Dr. Alden and Perry.  *Compare* Hr'g Tr. 51:50–51:9, 72:8–73:2, 177:6–186:25 (Apr. 7, 2022) (Perry testimony), *with* Hr'g Tr. 136:15–137:4, 245:12–247:11 (Apr. 7, 2022) (Dr. Alden testimony).  Based on the evidence presented over the four-day trial on these contested matters, the Court finds that the Westbank Expressway Quit Claim Deed and the 9th Street Joint Venture Agreement are not valid or enforceable documents, *see supra* ¶¶ 9–117, and, for reasons stated above, the Court has disregarded Dr. Alden's testimony altogether.  The Court

---

[8]        *See supra* note 3.

accepts Perry's testimony regarding the claims alleged in Proof of Claim No. 31.  Although Perry is financially unsophisticated, he presented as an earnest, truthful witness.

The Court finds that Dr. Alden has not carried his burden to show that the amounts claimed in Proof of Claim No. 31 are owed by Perry.  Perry acknowledged, however, owing a debt to Dr. Alden to reimburse him for $2,700 in cement work associated with the Star Motel (a property owned by Perry), as well as owing a $4,000 debt to Dr. Alden to reimburse him for a personal check Perry wrote to Dr. Alden that was returned for insufficient funds.  *See* Hr'g Tr. 177:24– 179:14 (Apr. 7, 2022).   Thus, the Court sustains in part and overrules in part Perry's objection to Proof of Claim No. 31 and allows Dr. Alden a general unsecured claim in the amount of $6,700.

### 8.   *Objection to Proof of Claim No. 32*

On January 29, 2021, attorney Sanders filed a proof of claim against the estate on behalf of Crescent City Medical Services, LLC, asserting a secured claim of $146,466.66 for "Money Loaned."  [No. 20-11986, Proof of Claim No. 32].  Like other proofs of claim filed by Sanders, no one executed Proof of Claim 32 as required by Bankruptcy Rule 3001(b).  *See id*.  Attached to Proof of Claim No. 32 was (i) a three-page document, not dated or signed, entitled "Loans to and Payments from Dennis Perry," purporting to include "all loans (promissory notes, collateral mortgage, and unsecured loans) and all payments (applied to interest)"; (ii) Promissory Note Nos. 1–6; and (iii) copies of 60 checks (some front and back), written to Perry or Deals on Wheels by payor Crescent City Property Redevelopment Association LLC, 4330 State Street Drive LLC, South Jefferson Davis Parkway LLC, Private Connection Property Inc., or Crescent City Medical Services Inc., and all purportedly signed by Dr. Alden and identical to those attached initially to Proof of Claim No. 26.  *See id*.

On February 22, 2021, Perry filed an objection to Proof of Claim No. 32, contesting the amounts owed to Crescent City Medical Services, LLC under Promissory Note Nos. 1–6, and asserting that the claim for any amounts owed should be recharacterized as unsecured because no writings were attached to support the claim's secured status. [No. 20-11986, ECF Doc. 83]. On May 5, 2021, without leave of Court or Perry's consent, the claimant amended Proof of Claim No. 32, added Sanders' signature as Crescent City Medical Services, LLC's attorney, and omitted the exhibits that had been attached to the proof of claim. [No. 20-11986, Proof of Claim No. 32-2]. On November 16, 2021, without leave of Court or Perry's consent, the claimant again amended Proof of Claim No. 31 to (i) change the name of the creditor to William W. Alden, (ii) increase the amount of the claim from $146,466.66 to $425,521.22, and (iii) attach a different, undated, unsigned ledger purportedly tracking loans made by Dr. Alden's closely held entities and any payments made by Perry on those loans. [No. 20-11986, Proof of Claim No. 32-3].

The burden of proof to justify the amounts claimed on Proof of Claim No. 32 rests with the claimant, Dr. Alden.[9] Nothing attached to Proof of Claim No. 32 supports the assertion made on the proof of claim form that "Debtor assigned all personal & business assets as collateral." [No. 20-11986, ECF Doc. 32-3]. Rather, the evidence presented over the course of the four-day trial reveals that (a) the debt owed pursuant to the NextGear Promissory Note has been satisfied and that the Collateral Mortgage should have been cancelled/released, *see supra* ¶¶ 17–42; (b) the Westbank Expressway Quit Claim Deed and the 9th Street Joint Venture Agreement are not valid or enforceable, *see supra* ¶¶ 9–117; (c) Promissory Note No. 7 is not a valid, enforceable contract, *see supra* ¶¶ 69–72; and (d) the amount owing by Perry under Promissory Note No. 6 is $15,000, *see supra* ¶¶ 43–68. The Court has been presented with no competent evidence regarding the

---

[9]    *See supra* note 3.

calculation of interest under any of the Promissory Note Nos. 1–6; therefore, the Court awards none.

The Court finds that Dr. Alden has failed to carry his burden to show that Perry owes him $425,521.22 in an allowed secured claim; rather, for the reasons stated above, the Court sustains in part and overrules in part the objection to Proof of Claim No. 32 filed by Perry and allows Dr. Alden a general unsecured claim in the amount of $12,000.

### C. Rulings on Motions

1. *Motion To Terminate Joint Venture Agreements in Order To Trigger Sale Provisions and Motion for Accounting [No. 20-11986, ECF Doc. 79]*

In his *Motion To Terminate Joint Venture Agreements in Order To Trigger Sale Provisions and Motion for Accounting* (the "Motion To Terminate Joint Ventures"), Perry seeks to terminate the Palm Drive JV Agreement, the Bonfouca JV Agreement, and the Sampson JV Agreement, all dated August 17, 2017, and invokes the clause contained in each of the three agreements that provides:

> If said property has not sold within said time period, then beginning on the three hundred and sixty sixth (366) day, either party has the option to request that the property be sold at public auction, with appraisement, and any profit or losses to be then divided equally between Perry and Perry Associates, LLC.

Debtor Exs. 41, 46 & 49. Dr. Alden filed a response to the motion, suggesting that the sale of the properties, each of which is titled to a wholly owned affiliate of Dr. Alden, would end up costing the Debtor's estate, as he asserts that the accounting required by the joint venture agreements would show that he is entitled to reimbursement for considerable amounts he has spent maintaining the properties since he purchased them. [ECF Doc. 163].

More than 365 days have passed since the execution of the Palm Drive JV Agreement, the Bonfouca JV Agreement, and the Sampson JV Agreement on August 17, 2017, and the properties

have not been sold.  The Court accepts Perry's invocation of the option in each agreement to sell the properties.  But the Court finds that the evidence presented by both Perry and Dr. Alden to provide an accounting of the expenses incurred to maintain or renovate each of the properties to be woefully unreliable and incomplete.  The Court grants the Motion To Terminate Joint Ventures and, pursuant to 11 U.S.C. §§ 105(a) & 1183 to facilitate the development of a consensual plan of reorganization, instructs the Subchapter V Trustee, in coordination with Debtor's counsel, (i) to obtain independent appraisals of the Palm Drive Property, the Bonfouca Property, and the Sampson Property; (ii) within 30 days of this Order, file required pleadings to retain a real estate broker on behalf of the estate who will market and sell the properties within 120 days of the date of this Order; and (iii) seek final approval from this Court of the sale of each of the properties. Proceeds from the sale of each property will be divided equally between Perry and Perry Associates, the counterparties to each joint venture agreement.

   2.   *Debtor's Motion To Avoid Quit Claim Deed, [No. 20-11986, ECF Doc. 91]*

   Through this motion, Perry asks this Court to declare the Westbank Expressway Quit Claim Deed to be an absolute nullity and to enter an Order instructing the Jefferson Parish Clerk of Court to cancel the Westbank Expressway Quit Claim Deed recorded by Dr. Alden on May 29, 2019. The Alden Entities filed an opposition to Perry's motion.  [No. 20-11986, ECF Doc. 164].

   Based on the evidence presented to the Court over the course of the four-day trial on these consolidated contested matters, the Court finds that the Westbank Expressway Quit Claim Deed is not valid or enforceable.  *See supra* ¶¶ 9–117.  Therefore, the Court grants the *Debtor's Motion To Avoid Quit Claim Deed* and instructs the Jefferson Parish Clerk of Court to cancel the Westbank Expressway Quit Claim Deed defined herein from the public records.

### 3. Debtor's Motion To Reject Joint Venture Agreement on 9th Street as Executory Contract, [No. 20-11986, ECF Doc. 97]

Through this motion, Perry seeks to reject the 9th Street Joint Venture Agreement as an executory contract in the event that the Court does not find the 9th Street Joint Venture Agreement to be invalid and unenforceable after the trial on the merits in these contested matters. The Alden Entities filed an opposition to Perry's motion. [No. 20-11986, ECF Doc. 161]. Based on the evidence presented to the Court over the course of the four-day trial on these consolidated contested matters, however, the Court does find that the 9th Street Joint Venture Agreement is not valid or enforceable, *see supra* ¶¶ 9–117; thus, the Court denies as moot the *Debtor's Motion To Reject Joint Venture Agreement on 9th Street as Executory Contract*.

### 4. Motion To Cancel Collateral Mortgage, [No. 20-11986, ECF Doc. 284]

Through this motion, Perry asks this Court to declare the underlying debt secured by the Collateral Mortgage to be satisfied and to enter an Order instructing the Jefferson Parish Clerk of Court to cancel the Collateral Mortgage recorded by Dr. Alden on June 8, 2015. The Alden Entities filed an opposition to Perry's motion, asserting that a Louisiana state court in the Dr. Alden Foreclosure Action had rendered a final judgment finding that Perry had not satisfied the debt secured by the Collateral Mortgage and that the Louisiana state court's ruling acts as *res judicata* in this matter. [No. 20-11986, ECF Doc. 290].

Federal courts give state court judgments the same preclusive effect that they would enjoy in the courts of the rendering state. *See Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205, 210 (5th Cir. 2003) (citing 28 U.S.C. § 1738; *Marrese v. Am Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)). Under Louisiana law, five conditions must be met for a matter to be considered *res judicata*:

(1) the judgment is valid; (2) the judgment is final: (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Tower Partners, L.L.C. v. Wade*, 869 So. 2d 126, 130 (La. App. 4 Cir. 2004) (quoting *Burguieres v. Pollingue*, 843 So. 2d 1049, 1053 (La. 2003)). No final judgment was rendered in the Alden Foreclosure Action; therefore, any rulings made by the state court in that proceeding do not act as *res judicata* here. *See supra* ¶ 131.

Based on the evidence presented to the Court over the course of the four-day trial on these consolidated contested matters, the Court finds that Perry has satisfied the debt secured by the Collateral Mortgage and that Dr. Alden should have released the Collateral Mortgage. *See supra* ¶¶ 17–42. Therefore, the Court grants Perry's *Motion To Cancel Collateral Mortgage* and instructs the Jefferson Parish Clerk of Court to cancel the Collateral Mortgage identified herein from the public records.

*5. Motion for Relief from the Automatic Stay, [No. 20-11986, ECF Doc. 172]*

Through this motion, Dr. Alden seeks relief from the automatic stay to allow him to exercise any state law rights that he may have as a junior lienholder regarding the 9th St. Property under the Collateral Mortgage, asserting that the value of his interests in the property is diminishing and not adequately protected. Perry filed an opposition to that motion. [No. 20-11986, ECF Doc. 186].

Based on the evidence presented to the Court over the course of the four-day trial on these consolidated contested matters, the Court finds that Perry has satisfied the debt secured by the Collateral Mortgage and that Dr. Alden should have released the Collateral Mortgage. Therefore, Dr. Alden no longer holds an interest in the 9th St. Property or, alternatively, the value of that

interest is zero. For that reason, the Court denies Dr. Alden's *Motion for Relief from the Automatic Stay*.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the objection filed by Dennis Perry to Proof of Claim No. 22 filed by Darryl Fish is **SUSTAINED** and Proof of Claim No. 22 is **DISALLOWED** in its entirety.

**IT IS FURTHER ORDERED** that, as to the claims asserted in Adversary No. 21-1024, *Dennis Perry v. Darryl Fish*, that have been consolidated with the contested matter associated with Proof of Claim No. 22:

- The Court **DENIES AS MOOT** Count One, requesting turnover of the 9th St. Property to the Debtor pursuant to 11 U.S.C. § 542;

- The Court **GRANTS** Count Two, requesting damages for Fish's failure to pay the cash rent owed under the First 9th St. Lease, and assesses judgment against Fish and in favor of Perry in the total amount of $8,735, representing $3,485 in stipulated rental arrears up to July 2018 plus 25 months of unpaid rent at $350 per month during Fish's continued occupancy of the 9th Street Property between July 2018 and August 2021; and

- The Court **DENIES** Count Three in its entirety.

**IT IS FURTHER ORDERED** that the *Motion To Refer Debtor to United States Attorney and/or Federal Bureau of Investigation*, [Adv. No. 21-1024, ECF Doc. 68], is **DENIED**.

**IT IS FURTHER ORDERED** that the *Motion for Willful Violation of the Automatic Stay and for Damages*, [No. 20-11986, ECF Doc. 188], filed by Dennis Perry is **DENIED**.

**IT IS FURTHER ORDERED** that the objection filed by Dennis Perry to Proof of Claim No. 25 filed by Dr. Alden is **SUSTAINED** and Proof of Claim No. 25 is **DISALLOWED** in its entirety.

**IT IS FURTHER ORDERED** that the objection filed by Dennis Perry to Proof of Claim No. 26 filed by Dr. Alden is **SUSTAINED** and Proof of Claim No. 26 is **DISALLOWED** in its entirety.

**IT IS FURTHER ORDERED** that the objection filed by Dennis Perry to Proof of Claim No. 27 filed by Private Connection Auto, LLC is **SUSTAINED** and Proof of Claim No. 27 is **DISALLOWED** in its entirety.

**IT IS FURTHER ORDERED** that the objection filed by Dennis Perry to Proof of Claim No. 28 filed by Private Connection Auto, LLC is **SUSTAINED** and Proof of Claim No. 28 is **DISALLOWED** in its entirety.

**IT IS FURTHER ORDERED** that the objection filed by Dennis Perry to Proof of Claim No. 29 filed by Crescent City Property Redevelopment Association LLC is **SUSTAINED** and Proof of Claim No. 29 is **DISALLOWED** in its entirety.

**IT IS FURTHER ORDERED** that the objection filed by Dennis Perry to Proof of Claim No. 31 is **SUSTAINED IN PART** and **OVERRULED IN PART**; Dr. Alden is **ALLOWED** a general unsecured claim in the amount of $6,700.

**IT IS FURTHER ORDERED** that the objection filed by Dennis Perry to Proof of Claim No. 32 is **SUSTAINED IN PART** and **OVERRULED IN PART**; Dr. Alden is **ALLOWED** a general unsecured claim in the amount of $12,000.

**IT IS FURTHER ORDERED** that, to the extent the Court did not rule on any of the motions in limine filed on behalf of any of the Alden Creditors during the course of the four-day trial, [Adv. No. 21-1002, ECF Docs. 108–113 & 115], those motions are **DENIED**.

The Court will enter separate judgments on the Petitions filed in Adversary Proceedings Nos. 21-1002 and 21-1024 in accordance with Bankruptcy Rules 7054 and 9021.

New Orleans, Louisiana, this 1st day of September, 2023.

 

 

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE